# Bass *v.* The State.

## *Indictment for Wanton Injury to Cattle.*

1. *Averment as to ownership of property, in different counts; election.*—In an
indictment for wanton injury to stock, or other similar offense, if there is any
doubt as to the ownership of the property, it may be laid, in two or more
counts, in different persons; and in like manner, when the identity of the
owner is known, but there is a doubt as to his true name, it would not be im-
proper, though probably unnecessary, to aver it in different forms, in separate
counts.  But, when the ownership is laid in two or more persons, in separate
counts, and the evidence adduced on the trial discloses two or more distinct
offenses, one applicable to each count, a case of election is presented, and
there can be a conviction of only one offense.

2. *Form of judgment on conviction, where part of fine goes to person injured.*
In a criminal prosecution under a statute which gives one-half of the fine to
the prosecutor, or person injured (as under Code, §§ 4409–10), judgment
should, on a conviction, be rendered in favor of the State, for the use of the
county, for the whole amount of the fine, to be collected as other fines on con-
victions of misdemeanor.  There is no authority for a severance of the judg-
ment, nor for the award of execution as in civil cases.

3. *Unlawful or wanton killing or injury to cattle, &c.; amount of fine; damage
feasant as defense.*—Under the statute prohibiting and punishing the unlawful
or wanton killing or injuring of stock, &c. (Code, §§ 4409–11), it is provided
that the defendant, on conviction, "shall be fined not less than twice the
value of the injury," &c.; yet the statute declares also, that if the cattle were
at the time doing damage to a growing crop, in a field inclosed by a lawful
fence, that fact may be shown "in extenuation or justification of the injury,
as the jury may determine;" and the effect of this evidence may be to reduce
the fine, at the discretion of the jury, below the minimum fixed by the statute.

4. *Same; same*—To make this defense available, it is not necessary for the
defendant to show that the owner of the stock pulled down his fence, and
turned the cattle on his growing crop.

From the Circuit Court of Sumter.

Tried before the Hon. L. R. Smith.

The indictment in this case contained two counts; the first
charging that the defendant "did unlawfully and wantonly
kill, destroy, or injure an ox, the personal property of Wil-
liam H. Saunders;" and the second, that he "did unlawfully
or wantonly kill, destroy, or injure an ox, the personal prop-
erty of William H. Saunders, jr."  The defendant demurred
to the indictment, because it did not aver the value of the
ox, and because it did not aver the value or amount of the

injury; but the court overruled the demurrer, and he then pleaded not guilty. On the trial, as appears from the bill of exceptions, the evidence adduced by the State showed that two oxen had been killed, by being shot, one belonging to William H. Saunders, and the other to William H. Saunders, jr., who was his son; and the evidence tended to show that they were purposely killed by the defendant, because they trespassed upon and damaged his growing crop of corn, which was in a field adjoining the pasture of said W. H. Saunders, where the oxen run with his other cattle. It was shown that the field was situated within the district where the stock law was of force; that the fence inclosing the pasture was old and rotten, and was found pulled down, or had fallen of its own weight, leaving a gap through which the cattle strayed into the field; but, as to the condition of the fence at that point, whether it appeared to have been pulled or thrown down, or to have fallen of its own weight, there was some conflict in the evidence. The field adjoining the pasture belonged to one Gould, in whose employment the defendant was working as a laborer in making the crop; and said Gould testified, on the part of the defendant, that Saunders's cattle were in the habit of trespassing on his crops, and had caused him much damage; that he had frequently complained to Saunders about the cattle, and had been told by him to shoot them if he could not keep them out of his field. Other witnesses testified to the same effect, as to the trespassing and damage done by the cattle, the complaints about it in the neighborhood, and the permission given by Saunders to kill them. Saunders testified, that the oxen were worth $75; while the evidence for the defendant showed, "that the value of a pair of oxen ranged from $30 to $60." This is about the substance of the evidence, all of which is set out in the bill of exceptions. "The court charged the jury, among other things: 'It is only in cases of necessity that a person is justified, under this law, in shooting stock trespassing on his crops. I will illustrate by an example. If your neighbor were to pull down his fence, and turn his stock in on your crop, then you would be justified in shooting them. If the defendant shot this stock without its being necessary, he would be guilty as charged." The verdict and judgment are set out in the opinion of the court.

CHAPMAN & SMITH, for the defendant.—1. The indictment should have alleged the value of the stock, or the extent or amount of the injury to them, since this is by statute made the basis of the fine. The prosecution is partly for the benefit of the person injured, and is a quasi-civil proceeding,

[Bass v. The State.]

as in the analogous case of larceny.— *Garner v. The State*, 8 Porter, 447.

2. If stock is injured while doing damage to a growing crop, this fact shall be received in evidence on the trial, by the express words of the statute, "in extenuation or justification of the commission of such injury, as the jury may determine." But the charge of the court limited this defense to cases of necessity. Necessity will justify or extenuate any act, even the taking of human life, and is not within the operation of this statute.

H. C. Tompkins, Attorney-General, for the State.

STONE, J.—The indictment in the present case is framed under section 4409, Code of 1876. It contains two counts. The first charges, that the accused " did unlawfully and wantonly kill, destroy, or injure an ox, the personal property of William H. Saunders." The second employs the language, " did unlawfully or wantonly kill, destroy, or injure an ox, the personal property of William H. Saunders, jr." This form of presentment is proper, if not necessary, when a doubt exists as to the ownership of the property, alleged to have been killed or injured. It would not be improper, but probably unnecessary, if the two counts were intended to charge the property in the same person, and a doubt existed whether he was called and known as William H. Saunders, or William H. Saunders, jr. Under our system of pleading, an addition, or suffix to a proper name, is not necessary.

But the evidence in this case proves that William H. Saunders and William H. Saunders, jr., are two persons, father and son; and the tendency of the proof is, that two oxen were killed; one the property of the father, and the other the property of the son. There was a general verdict of " guilty as charged in the indictment," fixing " the value of the oxen at fifty dollars," and assessing the fine at one hundred dollars. The court thereupon adjudged, " that the State of Alabama, for the use of Sumter county, recover of the defendant the sum of fifty dollars, the fine assessed by the jury against Wm. Bass, together with the costs in this behalf expended, and for which execution may issue. It is further considered and adjudged by the court, that W. H. Saunders, sr., recover of Wm. Bass the sum of twenty-five dollars, being one-half the value of the oxen, together with the costs in this behalf expended, and for which execution may issue. It is also considered by the court, that Wm. H. Saunders, jr., recover of Wm. Bass the sum of twenty-five dollars, one-half the value of the oxen, together with the

costs in this behalf expended, and for which execution may issue." This was a parcelling of the verdict, rendering three judgments in favor of three separate persons, for the several parts of a gross finding by the jury; and in each of the cases there is a judgment, and execution ordered, for the costs in this behalf expended. This, of course, includes the whole costs, for there was but one prosecution. The result is, that there are three judgments rendered, each for the whole costs.

A second noticeable feature of this case is, that while the verdict of the jury is general, and does not ascertain the separate values of the oxen, the judgment assumes that the values were equal, and so awards to each owner of the property destroyed an equal part of the fine assessed. Third, the judgments rendered in this case are in the form of judgments in civil suits, to be enforced by common writs of *fieri facias*, instead of the rule applicable to State prosecutions. Now, while on a conviction in this case, one-half the fine will go to the owner of the animal injured, under section 4410 of the Code, this does not authorize a severance of the judgment. The judgment should have been rendered in favor of the State of Alabama, for the use of Sumter county, for the whole finding of the jury, to be collected as other fines are collected, on convictions of misdemeanor. The division of the money comes afterwards.

This, if the only error in the record, might be here corrected, and the proper judgment rendered. But another error was committed on the trial, which it is our duty to notice.—Code of 1876, § 4990. We have shown above that the present indictment is good, and that it is not a misjoinder of counts when, in one count, the property is averred to be in one person, while in the other, it is averred to be in a different person. But when, as in this case, the several counts charge several and distinct offenses, in unlawfully and wantonly killing the separate property of two or more persons, the indictment, not only in form, but in substance, charges more offenses than one. In such case, the offense charged being a misdemeanor, there can not be a conviction of more than one of the offenses. The doctrine of election applies in such cases.— *Wooster v. The State*, 55 Ala. 217. Applying this principle to the present case, the accused can not, under this indictment, be convicted of killing more than one of the oxen.

The statute under which this indictment was found, approved February 3d, 1877 (Pamph. Acts, 136), creates a misdemeanor, out of what had theretofore been a civil trespass. Code of 1876, §§ 4409, 4410, 4411. The third section of the act, constituting the section of the Code last named, pro-

vides, that "if the stock named in the second preceding section is injured while doing damage to any growing crop inclosed by a lawful fence, or, where stock laws prevail, the fields of which are cultivated without a fence, and the animal injured has broken over said fence, or entered upon such lands and trespassed upon the crop, the evidence of this fact shall be received upon the trial, in extenuation or justification of the commission of such injury, as the jury may determine." The section referred to as 'second preceding,' is 4409 of the Code. That section declares, that any offender against its provisions must "be fined not less than twice the value of the injury," &c.; and section 4410 declares, that "one half of the fine shall go to the owner of the property." Section 4411 provides what shall be received in evidence (enumerated above) "in extenuation or justification of the commission of the injury." Now, evidence of the facts enumerated, if given, would be authority for the jury, if they so determined, to reduce the fine below the minimum declared in section 4409, or to acquit the defendant altogether. Such is the import of the language, "in extenuation or justification." It is a question entirely for the jury to determine, to what extent, if any, the offense is extenuated, or whether or not it is excused by such facts. If the jury determine that the act is excused by the trespass the stock is committing to a growing crop, and on that account acquit the defendant, they only do what the statute empowers them to do. So, if for the same reason, the jury determine the offense is extenuated, and they assess a fine at less than "twice the value of the injury to the animal," they are within the terms of the statute. When parties, whose stock has been killed or injured while trespassing on another's growing crop, elect to proceed by indictment under this statute, rather than by a civil action of trespass to redress the grievance, they take upon themselves the risk of having the jury extenuate or excuse the offense, if the facts bring the case within the terms of §.4411, copied above. It is a question of enlightened discretion for the jury, which they should exercise for the public welfare, in view of all the attendant circumstances.

Under these rules, the charge of the court excepted to can not be vindicated. The effect of that charge was, that unless the owner of the stock pulled down the defendant's fence, and turned his stock on the defendant's crop, then the defendant would be guilty as charged, if he killed the oxen. This is not a fair interpretation of the statute, as we have shown above.

Reversed and remanded. Let the defendant remain in custody, until discharged by due course of law.