# Williams *v.* The State.

*Indictment for Assault with Intent to Murder.*

1.    *Election.*—In a prosecution for an assault with intent to murder, if the testimony of the prosecutor shows two distinct assaults upon him by the defendant, each being an attempt to shoot him with a gun within shooting distance, and the interval between the two being too great to constitute them parts of one and the same transaction, the prosecution should be required to elect between the two offenses.

2.    *Assault with intent to murder ; constituents of offense ; presumption of malice, from use of deadly weapon.*—Every assault with intent to kill is not necessarily an assault with intent to murder : there must be malice in the attempt.    But, when the assault is made with a deadly weapon, in sufficient proximity to inflict a deadly wound, the law implies malice from the use of such weapon, and casts on the defendant the *onus* of proving that the assault was in self-defense, or that the killing, if consummated, would not have been murder; unless these defensive facts are shown by the testimony which proves the assault.

FROM the City Court of Mobile.

Tried before the Hon. O. J. SEMMES.

The indictment in this case charged that the defendant, Frank Williams, "unlawfully and with malice aforethought assaulted Irvin Johnson with a gun, with the intent to murder him."    On the trial, as the bill of exceptions states, the said Irvin Johnson, being introduced as a witness for the prosecu-

[Williams v. The State.]

tion, "testified in substance as follows: That the defendant shot him last year, in Mobile county; that he did not recollect the exact time, but it was since last summer (the summer of 1884), and before the finding of the indictment; and that the shooting took place under the following circumstances: Witness was walking along close to his house, when he saw the defendant lying in the bushes asleep, and called to his wife, who was the defendant's mother, and told her to look at her boy lying there asleep. Defendant then jumped up, with a gun in his hands, and snapped one barrel of his gun at him, being about twelve feet from him at the time. Witness then turned away, and walked to the house of one Juzan, about three hundred yards distant, where there were several persons, and told them that his boy down there had tried to kill him; and, after staying there a very little while, he walked off down a lane, on the way to town, and got on a bridge which crossed the creek. By this time, the defendant had cut across the field from where he first assaulted witness, and came up behind witness, while he was walking across on said bridge, and shot him, striking him in the back with one shot. Witness was walking away from him at the time, and did not see defendant at the time of the shooting. When defendant shot witness, they were about thirty-nine steps apart. The shot was never taken out, and is now in witness' back. A doctor probed for it, but could not get it. Witness never saw the shot, but he thought it was a buck-shot, from the fact that he saw where six buck-shot struck a post near where he was standing at the time, and there were no shot in said post up to that time." Leon Nicholas, another witness for the State, "testified, that he saw the defendant shoot at said Johnson on the 22d July, 1884; that said Johnson, just before the shooting, came up to the house of one Juzan, where witness and several other persons were, and told them that the defendant had tried to kill him; that Johnson then started off towards town, and, as he was on a bridge which crossed the creek, the defendant in the meantime had crossed through the field, and came up to the fence behind Johnson, and fired, Johnson walking away from him at the time, and being about fifty yards off. The defendant asked the court to strike out this evidence, as it tended to prove a different assault from the one proved by said Johnson. The court overruled the objection, and the defendant excepted. The defendant then asked the court to require the prosecution to elect upon which assault it would proceed; but the court refused to require an election, because both assaults constituted but one and the same transaction; to which ruling and refusal the defendant excepted."

The defendant requested the following charges to the jury: (1.) "A probability of the defendant's innocence is a just

[Williams v. The State.]

foundation for a reasonable doubt of his guilt, and therefore for his acquittal ; and if there is a probability that the defendant, at the time he assaulted said Johnson, intended merely to kill him, it is the duty of the jury to find him not guilty of an assault with intent to murder." (2.) " Proof of an intent to kill merely is not sufficient proof of an intent to murder ; and it is the duty of the jury, on such proof, to find the defendant not guilty of an assault with intent to murder." The court refused each of these charges, and the defendant duly excepted to their refusal.

The name of the appellant's counsel, if any appeared in this court, is nowhere shown ; and there is no brief on file.

T. N. McCLELLAN, Attorney-General, for the State.

STONE, C. J. —If Johnson's account of the altercation be the true one, defendant committed an assault on him, when he first attempted to shoot him near Johnson's residence. This attempt, the testimony of this witness tends to show, was made with a gun, and within shooting distance. In the absence of proof that this was done in self-defense, or under such provocation as to reduce the offense to man-slaughter, if death had ensued, this was an assault with intent to commit murder.—*Allen v. The State,* 52 Ala. 391 ; *Meredith v. The State,* 60 Ala. 441 ; *DeArman v. The State,* 71 Ala. 351.

The testimony does not inform us what time elapsed between the first alleged assault, referred to above, and the actual shooting. It was long enough for Johnson to walk three hundred yards, hold a conversation, the duration of which is not given, and then walk some distance in a different direction. It is probable the interval was not less than fifteen minutes—possibly, much more. The second assault did not succeed the first so nearly in point of time, " as to constitute in fact but one transaction."—*Johnson v. The State,* 35 Ala. 363.

As there is testimony tending to show that the second assault, like the first, was made with intent to take life, they must, in the state of the proof before us, be treated as two distinct, substantive offenses, and the prosecution should have been put to its election.—*Elam v. The State,* 26 Ala. 48 ; *Mayo v. The State,* 30 Ala. 32 ; *Cohchran v. The State, Ib.* 542 ; *Hughes v. The State,* 35 Ala. 351 ; *Wooster v. The State,* 55 Ala. 217 ; *Bass v. The State,* 63 Ala. 108 ; *Jackson v. The State,* 74 Ala. 26. Some rulings may be found scarcely reconcilable with these, but our rule has prevailed too long to be disturbed.—1 Bish. Cr. Proc., 3d Ed., § 449, and notes; Whar. Cr. Pl. & Prac., 8th Ed., § 293, and notes. See, also, Clark's Man. § 2218 ;

[Prior v. The State.]

*People v. Rynders*, 12 Wend. 425; *Dowdy v. Com.*, 9 Grat. 727.

It is not every assault with intent to kill that is an assault with intent to commit murder. There must be malice in the attempt to take human life, to constitute this statutory felony. But, when the assault is made with a deadly weapon, in sufficient proximity to inflict a deadly wound, the law implies malice from the use of such instrument, and casts on the defendant the burden of proving that the killing, or attempt to kill, was in self-defense, or, if successful, would only be manslaughter; unless such defensive facts and circumstances are shown in the testimony which proves the killing, or attempt to kill.—*Hadley v. The State*, 55 Ala. 31.

Charges asked or given must be interpreted in the light of the testimony; and so interpreted, neither of the charges asked by defendant should have been given. They ignored all inquiry of justification, or extenuation, and asserted, in effect, that the prosecution must make independent proof of malice, beyond that which is implied from the unexplained use of a deadly weapon. This is not the rule. There is nothing in the other questions raised.

The judgment of the City Court is reversed, and the cause remanded. Let the defendant remain in custody, until discharged by due course of law.