Certiorari was granted to enable this Court to determine whether or not the trial court erred in refusing to grant the defendant's motion to require the prosecution to elect among charges of carnal knowledge. The opinion of the Court of Criminal Appeals, 363 So.2d 998, refers neither to that motion nor to the colloquy between counsel and the trial court in connection with it. However, the petitioner filed with his application for rehearing in the Court of Criminal Appeals his request for a finding of facts which included that motion and exchange, together with the language of the indictment, all containing references to the pertinent portions of the record and transcript, and which we have examined and found to be correct. Rule 39 (k), ARAP.
The indictment charged carnal knowledge or, in the alternative, abuse in the attempt thereof in the following form:
 The Grand Jury of said County charge that, before the finding of this indictment, JACKIE DEASON, alias JACKIE D. DEASON, whose name is to the Grand Jury otherwise unknown, did carnally know, or abuse in the attempt to carnally know Sherry Deason a girl under the age of twelve years, . . .
The opinion of the Court of Criminal Appeals recites the facts proved by the prosecution. Insofar as it relates to the problem of an election, the record shows that the mother of the prosecutrix testified that her daughter told her of having sex with her stepfather several times.
In the initial stage of the prosecutrix's testimony she testified that her twelfth birthday was January 10, (1975), and then she was asked:
 Q Now, when you were living there before your birthday in January this year — was this a house trailer?
A Yes, sir.
and
 Q Sherry, do you recall the Christmas Holidays, this last Christmas?
A Yes, sir.
Q Where did you spend the Christmas Holidays?
A Up at my Aunt's.
 Q After the Holidays were over, did you come back to Montgomery to go to school?
A Yes, sir.
 Q And then did you start going to school after the Holidays?
A Yes, sir.
 Q Did you go to school the first week after Christmas?
A Yes, sir.
 Q I call your attention, Sherry, to one afternoon when you got home from school. Was your father there at home?
A Yes, sir.
Q You're talking about Jackie Deason?
A Yes, sir.
And shortly thereafter she testified:
 Q After your brothers went outside to play ball, Sherry, did Jackie Deason say anything to you?
 A Well, he told me that he wanted me to do something for him, and I said I wanted to go outside and play, and he said I couldn't because I had to watch the baby.
 Q Had he ever said that he wanted you to do something for him before?
A Yes, sir.
 Q When he said that, told you you had to stay inside, what did you do then, Sherry?
A Well, I just started watching the baby. *Page 1003 
Q What did he do?
 A He took — he kept saying he wanted me to do something for him.
Q Did he do anything to you then?
 A I said I didn't want to do it, because I knew what he meant, and he started poking and tickling me.
Q Where was he poking and tickling you?
 A He was tickling me on my arms and poking me in the side.
Q What did he do then?
 A Then he took me, and I kept telling him to stop it and he kept saying he wanted me to do it and then in a minute he started pulling off my shorts and pants.
Q Where were you?
A We were in the living room.
Q Where were you in the living room?
A I was in the floor.
Q And where was he?
A He was behind me.
Q Behind you?
A Yeah.
Q And he started taking your clothes off?
A Yes, sir.
Q Did you ask him not to?
A Yes, sir. I said I didn't want to do it.
Q What did he say?
A He just said he was just going to make me do it.
Q Did you beg him not to do it?
A I just asked him not to.
Q What did he do then?
A Then he got on top of me.
Q Were your clothes on or off then?
A My pants and my shorts were off.
Q Your pants and shorts were off?
A Yes, sir.
Q Did he have his clothes on?
A Yes, sir. He had them on.
Q Did he not do anything with his clothes?
A No, sir, nothing but unzipped his pants.
Q Unzipped his pants. Where were you then?
A I was up on the couch.
Q Now, Sherry, what did he do then?
 A He took and laid on top of me and stuck his private into mine.
Q Did you feel him inside of you?
A Yes, sir.
Q How long was he there?
A Just a few minutes.
Q What were you doing?
A I was just laying there.
She told her mother about it on February 16. Then the following exchange occurred:
 Q Sherry, had your stepfather Jackie Deason done anything like this to you before?
. . . . .
A Yes, sir.
Q When was the first time he did it to you, Sherry?
. . . . .
Q How old were you?
A I was about nine.
. . . . .
Q How many times did he do it to you, Sherry?
. . . . .
 A Just — it would be — I mean about — it was more than five times I know.
Q More than five times?
A Yes, sir.
On cross-examination she testified that "it" happened "A couple of days or a week" after the holidays.
Following her testimony the State rested its case, whereupon the defense moved orally to require the prosecution to elect among the charges it had proved:
 There has been evidence in detail by the State that sometime in this year, 1977, so I think under the law they have clearly elected to proceed under that charge. That is their case whether they know it or not. They have elected for that to be their case.
THE COURT: State that again, now.
 MR. CAMERON: Yes, sir. The State has proved in detail that sometime in January of this year, in the afternoon *Page 1004 
when she came home from school he told her two brothers to get out and so forth, and they have gone into detail on that. My position is that under the law they have elected for that offense to be the one that they are going to prosecute under, and I couldn't find the exact case that I wanted, but I have got some cases. And, the importance of it is this, Judge. He has already proved that it happened when she was nine years old. Now, which one am I going to defend on. That is what I want to know. And, the second question is, how is the Court going to charge this Jury. There is only one —
 THE COURT: You mean the charge as to over twelve or under twelve? Is that what you are talking about?
MR. CAMERON: No, sir.
THE COURT: I don't understand that.
 MR. CAMERON: They have proved in detail — let me get my case, maybe that will help. (Handing book to The Court.) The first part of the decision, Your Honor.
 THE COURT: (Court reads.) All right, sir. Let me hear what you have to say.
 MR. CAMERON: What I am saying to the Court is this. The State has rested, and I simply do not know which charge I am called upon to defend against. I am ready to present my case —
THE COURT: With the two.
 MR. CAMERON: That's right. I couldn't demur to the indictment. They can shotgun the indictment but they can't shotgun the proof. That is what I am saying, very clearly.
 THE COURT: What you are saying is they allege a particular act at a particular time and proving that particular act at a particular time —
 MR. CAMERON: That's right. And, we get into variances, and we get into charges. In other words, like that robbery case we tried, there might be evidence that is admissible to show a codefendant here, or something like that, but we are entitled to a charge on it. I don't know what we are entitled to because I don't know which case they are relying on to prosecute any crime.
 MR. POOL: Judge, I would show the Court McElroy in Section 45.114.
THE COURT: I want to hear it again.
 MR. POOL: In McElroy, Section 45 — excuse me, it is 45.113, carnal knowledge cases. `In having carnal knowledge of a female under a specified age the State may prove that prior to the act upon which the prosecution has based had sexual relations with the female.' Thomas vs. State.
 THE COURT: I know, but that is what he is saying at this point. I think what you are saying is you can prove an act and you can prove other acts —
MR. POOL: Yes, sir.
 THE COURT: What he is saying is, which act are you talking about that is the crime, the evidence pertaining to those.
MR. POOL: What Mr. Cameron —
THE COURT: Is that what you are saying, Mr. Cameron?
 MR. CAMERON: That's right. What is the corpus delicti of this case?
 MR. POOL: She has testified that he did the same thing to her on numerous occasions. There is only one indictment, Judge. I think any one of the times that she has said would be sufficient to authorize a verdict. Cases say that the credibility of the witness is for the Jury to decide. And, it would be the State's contention if he is charged as to this one —
THE COURT: I understand that.
 MR. POOL: — and this one alone then he could set up an alibi that if you charged us out on this one it could probably alleviate the prosecution. It would be the State's contention that if they believed that it happened at any time from the girl's age nine, then they have the duty to convict. (emphasis added)
In opposition to the petitioner's position, the State has viewed the problem as one of evidence law, referring us to that *Page 1005 
portion of the opinion of the Court of Criminal Appeals in which McElroy's Alabama Evidence, § 45.11 (3) (3rd Ed. 1977) is cited for the proposition that in a carnal knowledge case the prosecution may introduce proof of sexual relations between the accused and the prosecutrix before and after the act on whichthe prosecution is based. That is a correct proposition of evidence law. The reason behind the admissibility of such acts was discussed by Mr. Justice Brown in Harrison v. State,235 Ala. 1, 2, 178 So. 458, 459 (1937):
 [w]e hold that the weight of authority sustains the proposition that it is permissible for the prosecutors to offer evidence of such acts occurring before and after the alleged act on which the indictment is based, as tending to sustain the principal charge by showing the relation and intimacy of the parties. (citations omitted) (emphasis added)
One of the cases cited as authority allowed proof of subsequent sexual conduct upon the same child because:
 "[i]t went to show the existence of relations between her and the defendant which tended to make the commission of the act of a similar nature, which was the subject of the charge, more probable, and so to confirm her previous testimony. That the accused was under the influence of a sexual passion in respect to this girl in July [the subsequent act], which led him then to take advantage of her youth in order to gratify it, was logically relevant to the question whether he gave rein, in the same manner, to such passion in respect to her, three months before [the principal offense]." (emphasis added)
He added:
 If such subsequent acts are too remotely related to the act upon which the prosecution is based, in point of time, to be without probative force, such evidence should not be admitted. (citation omitted) (emphasis added)
That discussion clearly demonstrates that the admissibility of sexual occurrences before and after the one charged in the indictment is based upon conditions of relevancy, that is, whether they are probative of the main charge. That rule of evidence, however, does not create for carnal knowledge cases an exception to the rule of election which applies to all others.
The indictment in this case charges two separate offenses in the alternative. This is permissible under our statute. Tit. 15, § 249, Alabama Code (Recomp. 1958) (now Code of 1975, §15-8-52), and places no obligation upon the prosecution to elect before hand which of those offenses it intends to prove. The case of Elam v. State, 26 Ala. 48 (1855) established the rule when the indictment charges only one offense:
 The true rule, . . . is to hold the State to the act to which the testimony relates, if it can be covered by the indictment, and but one offence is charged. If the prosecuting officer deems it for the interest of the State, that evidence as to different offences should be offered, he must frame the indictment accordingly; . . . We have laid down the rule generally, and think that, after the election is once made by offering evidence on the part of the State, it holds through all future stages . . . . (emphasis added)
The reason for placing the obligation to elect among the charges was stated in Carleton v. State, 100 Ala. 130,14 So. 472 (1893):
 When there is but one count charging a single offense, the law presumes, the defendant comes to trial prepared to meet the single charge, and the prosecution will not be permitted, after once having elected, to introduce evidence of another and different offense; . . .
Accord, Nuckols v. State, 109 Ala. 2, 19 So. 504 (1896);Untreinor v. State, 146 Ala. 133, 41 So. 170 (1906).
The same reasoning has been applied to indictments containing only one count with alternative averments. As early as Cochranv. State, 30 Ala. 542, 545 (1857) this Court commented upon both the propriety of such allegations and the prosecution's obligations under them: *Page 1006 
 Prior to the adoption of the Code, it was a rule, that an indictment, charging a man disjunctively, was bad. The reason was, that such indictment mentioned distinct offences, and did not show of which of them the indictors accused the defendant. . . .
Pointing out that the Code then in effect allowed disjunctive pleading in one count, the Court continued:
 Such an indictment, however, does not include more than one offence; and conceding that the State may elect under it, for which particular offense it will proceed, yet it cannot under it elect to proceed for two distinct offenses. . . .
 Under such indictment, the election of the State is made by introducing evidence of any act charged in it; and after introducing evidence of any such act, the State cannot give evidence of any other act charged. — (citations omitted) (emphasis added)
Accord, Williams v. State, 77 Ala. 53 (1884).
And in Warrick v. State, 8 Ala. App. 391, 62 So. 342, 343
(1913), involving a prosecution for violation of the prohibition law, the following language expressed the same limitation:
 The evidence introduced by the state had a tendency to prove the defendant's guilt of some of the offenses charged in the alternative in the first count of the indictment. Under that count he could be convicted of only one of those offenses. It was his right, before going into his defense on the evidence, to require an election by the state of the offense for which a conviction under that count would be sought, . . . (emphasis added)
To the same effect is Brooms v. State, 197 Ala. 419, 73 So. 35
(1916).
In Watkins v. State, 36 Ala. App. 711, 63 So.2d 293 (1953), Judge Harwood summed up the requirement:
 The doctrine of election operates to protect a defendant from being prosecuted for more than one offense in the same count of an indictment. Where the evidence discloses two or more offenses growing out of distinct and separate transactions, a court should grant a timely motion to require the State to elect. (citations omitted)
As this record discloses, the prosecution directed much of its proof of carnal knowledge to an occasion in early January, 1975, during her Christmas holidays. But it went further and proved other such occasions, specifically one when the prosecutrix was about nine years old. Indeed, the prosecutor's remarks disclose the State's position, that it could go to the jury on all of them. While proof of these other instances were relevant to the commission of the January offense, as we have stated, nevertheless under the authorities the petitioner could not have been convicted of their commission, having been charged in one count only. To the contrary, the authorities entitled him to require the State to elect between them. His timely motion to that effect should have been granted, and the failure to grant it was reversible error. The judgment of the Court of Criminal Appeals must be reversed and this case is remanded to that Court for further proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
All the Justices concur.