Lester Wilson Reed was charged in a two-count indictment with first degree sexual abuse, in violation of § 13A-6-66, Code of Alabama 1975, and attempted rape, in violation of §§13A-6-61(a)(3) and 13A-4-2, Code of Alabama 1975. (R. 1) The jury *Page 805 
found the appellant "guilty of sexual abuse in the first degree." He was sentenced to imprisonment in the state penitentiary for a term of five years, three years of said sentence to be suspended pending his good behavior. (R. 27)
The alleged victim in this case was the appellant's daughter, C.R., who was nine years old at the time of trial (September 24, 1986).
The prosecutrix testified as to five separate incidents wherein she was sexually molested by the appellant. (R. 11-15) Two of the incidents allegedly occurred when the prosecutrix was approximately seven years old and while the family was living in a trailer in Washington County, Alabama. (R. 33)
The other three incidents occurred at some point after the appellant and his wife had obtained a divorce. These incidents occurred around the time of the prosecutrix's eighth birthday while she was living in an apartment in Citronelle in Mobile County, Alabama.
Approximately one month after the fifth incident the prosecutrix reported the appellant's actions to her mother. She delayed reporting the incidents because she was afraid her father (the appellant) would "get mad" at her. (R. 17)
Ellen Reed, the prosecutrix's mother, testified that the appellant was her ex-husband. She had five children from her marriage to the appellant. The prosecutrix is the oldest child.
The appellant and Ms. Reed were married and divorced twice, the last divorce occurring in December of 1984. The appellant and Ms. Reed were first married in 1976 and obtained their first divorce in 1981. They were remarried in 1982. (R. 32) Ms. Reed testified that she and the prosecutrix lived in a house trailer in McIntosh, Alabama from 1976 until 1984, at which time they moved to Citronelle, Alabama.
The prosecutrix reported the incidents to Ms. Reed on October 13, 1985. The following day Ms. Reed took the prosecutrix to a Dr. Jack Thompson for a medical examination. Dr. Thompson found evidence of some irritation in the genital area but no evidence of penetration. (R. 38)
Ms. Reed testified that she noticed a change in the prosecutrix's behavior during 1985. During cross-examination she admitted that she and the appellant had fought in front of the children and that, after the divorce in 1984, she and the appellant had had arguments concerning her boyfriend of whom the appellant did not approve. (R. 43)
Ms. Reed continued seeing the appellant after the prosecutrix reported the incident to her. (R. 42)
Dr. Jack Thompson, the prosecutrix's pediatrician, testified on behalf of the defense. The prosecutrix was treated for encephalitis in 1983. He attributed the prosecutrix's behavorial abnormalities to residual effects from the encephalitis. (R. 14) Dr. Thompson testified that, when he examined the prosecutrix after the alleged incidents occurred, she did not seem to be "psychologically distressed." (R. 122) He found no evidence that anything had been inserted into the child's vagina and there was no sign of irritation present. (R. 118)
Several witnesses testified to the appellant's good reputation for truth and veracity.
Larry Faison, a psychological counselor and examiner who examined the appellant, testified that, based on the results from a "Personality Inventory" test administered to the appellant, the appellant showed no signs of pathology. His sexual and social values were normal according to the test. (R. 96) Mr. Faison saw no symptoms in the appellant normally associated with criminal behavior. (R. 104) He saw an extraordinary amount of anxiety present in the appellant. (R. 96)
 I
The appellant contends that the trial court erred in submitting the five separate incidents of sexual abuse, of which the prosecutrix testified, to the jury where none of the incidents were specified as that upon which a conviction was sought under *Page 806 
the indictment at issue. He argues that the jury received no guidance or indication whatsoever as to which incidents were the subject of this indictment, and which incidents were admitted merely because they were probative of his commission of the offense charged. He argues specifically that the trial judge should have compelled the State to elect which incident it was seeking to prove under the indictment.
This issue was preserved for our review. (R. 107-110) SeeDeason v. State, 363 So.2d 1001 (Ala. 1978); Dietz v. State,474 So.2d 120 (Ala.Crim.App. 1984), rev'd on other grounds,474 So.2d 127 (Ala. 1985); Cowan v. State, 460 So.2d 284
(Ala.Crim.App.), writ denied, 460 So.2d 287 (Ala. 1984).
After the defense rested, subject to the testimony of a temporarily absent witness, the court and the parties discussed the charges that would be given to the jury. (R. 105-108) The appellant then renewed his motion for judgment of acquittal:
 "THE COURT: Well, Ms. Vivar, you have got forty-five minutes more to think about it. Did you have any charges or anything?
 "MR. CLARK: No, sir. Judge, I would renew my motion for a directed verdict of acquittal and add in addition to the grounds previously assigned that the State has failed, if your Honor will allow certain testimony to be introduced, wherein the State said that they would show time and place. The State has never proven any time and place. Now, this is important, Your Honor, because if they are claiming an incident that may or may not have happened in a trailer, then you have got a venue question because the trailer was in Washington County. The State has never proven venue. Whether it happened in Mobile County or in Washington County. They have never said what incident they are relying on as the incident that is charged in the indictment. Now, it's my understanding of the law that Your Honor can let in subsequent — I mean, can let in acts — prior acts of the same caliber but I will venture to say that I can't tell which is the act they are complaining of and which is the acts that they are offering as similar prior acts.
The State never proved which act under the indictment they are complaining about. It's a venue problem.
 "MS. VIVAR: Well, Your Honor, there was testimony to the effect that there were three different occasions in Mobile County. These were subsequent to the Washington County incidents. Of course, the Washington County ones are not what we are talking about in here.
"MR. CLARK: I don't know that, Judge.
 "MS. VIVAR: It goes to intent, though, and certainly is admissible as to intent, and that's what it was brought in to show. But we have, you know, we did not allege a date in the indictment and we are not required to get a specific day, time, whatever. We don't have it in the indictment and we don't have to prove that. We have got it narrowed down to a year between 1984 and 1985, the incidents we are talking about; the latest one being approximately one month before the child told her mother in 1985.
 "MR. CLARK: Judge, what I am saying, I don't think the Court and I don't think the jury can say this is the incident we've got to find is true or not true and these are the incidences that are similar in nature that was allowed in for some reasons.
Your Honor asked Ms. Vivar if she was going to link it up and she said yes, and she never has. Now, I don't know which incident that I am called on to defend and which ones are predicate acts of a similar kind. And I don't think you can say that this is the act that they have named in that indictment.
"THE COURT: I deny your motion.
"(Off the record)
"(Jury present:)" (R. 107-110) (emphasis added)
We agree with the appellant that his counsel's argument sufficiently raised the issue of whether or not an election was required. Because the trial judge subsequently overruled his motion, and especially in light of the fact that the potential *Page 807 
for a venue problem existed in connection with this issue, we deem it appropriate to consider the appellant's contentions on appeal concerning the requirement of an election.
 "In a rape case, the State may introduce proof of sexual relations between the accused and prosecutrix before and after the act on which the prosecution is based. Ex Parte Deason, 363 So.2d 1001 (Ala. 1978). However, the accused cannot be convicted on the other acts of sexual intercourse which are not the subject of the indictment. Deason, supra. Thus, an election is required by the State in such cases so that the accused will only be convicted for the offense charged in the indictment."
Knight v. State, 495 So.2d 712, 713 (Ala.Crim.App. 1986).
 "It has long been held that different offenses of the same character may be properly joined in a single indictment: 'A careful solicitor should always frame the indictment with as many counts as may be necessary to meet the different phases the evidence may assume. Embezzlement and larceny, burglary and larceny, larceny and receiving stolen property, and offenses of like character may properly be joined in separate counts in the same indictment. . . .' Orr v. State, 107 Ala. 35, 18 So. 142 (1895); Rose v. State, 117 Ala. 77, 23 So. 638 (1898); Perry v. State, 25 Ala. App. 224, 143 So. 835, cert. denied, 225 Ala. 441, 143 So. 836
(1932); McDaniel v. State, 30 Ala. App. 447, 7 So.2d 583 (1942).
 "As noted by our Supreme Court in Deason v. State, 363 So.2d 1001 (Ala. 1978), '[T]his is permissible under our statute [§ 15-8-52, Code of Alabama 1975] . . . and places no obligation upon the prosecution to elect beforehand which of those offenses it intends to prove.' This situation is to be distinguished from one in which the indictment alleges one offense and different instances of that offense are made the subject of proof by the prosecution; in such instances the court should compel election:
 "The court will not exercise its power to compel an election unless it appears either from the indictment or the evidence that an attempt is made to convict the accused of two or more offenses growing out of separate and distinct transactions. Mayo v. State, 30 Ala. 32; Wooster v. State, 55 Ala. 217. Butler v. State, 91 Ala. 8, 9 So. 191. " Brooms v. State, 197 Ala. 419, 425, 73 So. 35, 37 (1916) (Mayfield, J., concurring); Deason v. State, supra."
Wilcox v. State, 401 So.2d 789, 792 (Ala.Crim.App. 1980), aff'd, 401 So.2d 794 (Ala. 1981). (emphasis added) See alsoCrittenden v. State, 476 So.2d 626, 629 (Ala.Crim.App. 1983), aff'd, 476 So.2d 632 (Ala. 1985).
In Deason, supra, our Supreme Court was faced with a factual situation strikingly similar to that which is before this court in the present case. The indictment in that case charged the following:
 "The Grand Jury of said County charge that, before the finding of this indictment, JACKIE DEASON, alias JACKIE D. DEASON, whose name is to the Grand Jury otherwise unknown, did carnally know, or abuse in the attempt to carnally know Sherry Deason a girl under the age of twelve years, . . . ."
Deason, supra at 1002.
The victim in the case was the appellant's stepdaughter. At the beginning of her direct testimony, the victim testified to an incident of sexual abuse by her stepfather which occurred during the Christmas holidays just before her twelfth birthday in January of 1975. After her testimony relating that incident, the following exchange occurred:
 " 'Q. Sherry, had your stepfather Jackie Deason done anything like this to you before?
* * * * * *
" 'A. Yes, sir.
 " 'Q. When was the first time he did it to you, Sherry?
* * * * * *
" 'Q. How old were you?
" 'A. I was about nine.
* * * * * * *Page 808 
" 'Q. How many times did he do it to you, Sherry?
 " 'A. Just — it would be — I mean about — it was more than five times I know.
" 'Q. More than five times?
" 'A. Yes, sir.'
 "On cross-examination she testified that 'it' happened 'A couple of days or a week' after the holidays."
Deason, supra at 1003.
During Deason's motion to require the prosecution to elect among the charges it had proved, the following discussion was had:
 " 'THE COURT: (Court reads.) All right, sir. Let me hear what you have to say.
 " 'MR. CAMERON: What I am saying to the Court is this. The State has rested, and I simply do not know which charge I am called upon to defend against. I am ready to present my case —
" 'THE COURT: With the two.
 " 'MR. CAMERON: That's right. I couldn't demur to the indictment. They can shotgun the indictment but they can't shotgun the proof. That is what I am saying, very clearly.
 " 'THE COURT: What you are saying is they allege a particular act at a particular time and proving that particular act at a particular time —
 " 'MR. CAMERON: That's right. And, we get into variances, and we get into charges. In other words, like that robbery case we tried, there might be evidence that is admissible to show a co-defendant here, or something like that, but we are entitled to a charge on it. I don't know what we are entitled to because I don't know which case they are relying on to prosecute any crime.
 " 'MR. POOL: Judge, I would show the Court McElroy in Section 45.114.
" 'THE COURT: I want to hear it again.
 " 'MR. POOL: In McEroy, Section 45 — excuse me, it is 45.113, carnal knowledge cases. "In having carnal knowledge of a female under a specified age the State may prove that prior to the act upon which the prosecution has based had sexual relations with the female." Thomas vs. State.
 " 'THE COURT: I know, but that is what he is saying at this point. I think what you are saying is you can prove an act and you can prove other acts —
" 'MR. POOL: Yes, sir.
 " 'THE COURT: What he is saying is, which act are you talking about that is the crime, the evidence pertaining to those.
" 'MR. POOL: What Mr. Cameron —
 " 'THE COURT: Is that what you are saying, Mr. Cameron?
 " 'MR. CAMERON: That's right. What is the corpus delicti of this case?
 " 'MR. POOL: She has testified that he did the same thing to her on numerous occasions. There is only one indictment, Judge. I think any one of the times that she has said would be sufficient to authorize a verdict. Cases say that the credibility of the witness is for the Jury to decide. And, it would be the State's contention if he is charged as to this one —
" 'THE COURT: I understand that.
 " 'MR. POOL: — and this one alone then he could set up an alibi that if you charged us out on this one it could probably alleviate the prosecution. It would be the State's contention that if they believed that it happened at any time from the girl's age nine, then they have the duty to convict. (emphasis added)' "
Deason, supra at 1004. (emphasis added)
The Supreme Court held:
 "[T]he admissibility of sexual occurrences before and after the one charged in the indictment is based upon conditions of relevancy, that is, whether they are probative of the main charge. That rule of evidence, however, does not create for carnal knowledge cases an exception to the rule of election which applies to all others.
. . . . .
 'The doctrine of election operates to protect a defendant from being prosecuted for more than one offense in the same count of an indictment. Where the evidence *Page 809 
discloses two or more offenses growing out of distinct and separate transactions, a court should grant a timely motion to require the State to elect. (citations omitted)'
 "As this record discloses, the prosecution directed much of its proof of carnal knowledge to an occasion in early January, 1975, during her Christmas holidays. But it went further and proved other such occasions, specifically one when the prosecutrix was about nine years old. Indeed, the prosecutor's remarks disclose the State's position, that it could go to the jury on all of them. While proof of these other instances were relevant to the commission of the January offense, as we have stated, nevertheless under the authorities the petitioner could not have been convicted of their commission, having been charged in one count only. To the contrary, the authorities entitled him to require the State to elect between them."
Deason, supra at 1005-1006, (quoting from Watkins v. State,36 Ala. App. 711, 63 So.2d 293 (1953)). (emphasis added)
The State was, in the case at bar, clearly attempting to submit several different incidents to the jury without specifying upon which incident a conviction was sought. The record reveals that the jury was never instructed as to exactly which act or incident was to be considered in their determination of guilt. There was no guidance or explanation given, whatsoever, to the jury regarding the purpose of the admission of these five incidents. Indeed, it is unclear upon which incident their conviction was based. See Knight, supra.
Because what occurred in this case is exactly what the Supreme Court condemned in Deason, supra, we hold that an election should have been compelled. For this reason, the appellant's conviction is due to be and is, hereby, reversed and remanded. See also Cofer v. State, 440 So.2d 1121
(Ala. 1983) and Grizzell v. State, 507 So.2d 969
(Ala.Crim.App. 1986), aff'd, Ex Parte State, 507 So.2d 972 (Ala. 1987).
Because of our holding as herein noted, we pretermit consideration of the other issues set out in the appellant's brief.
REVERSED AND REMANDED.
All the Judges concur.