BOWEN, Judge.
David Screws, the appellant, was convicted for first degree sexual abuse in violation of Ala.Code 1975, § 13A-6-66, and was sentenced to ten years’ imprisonment. He raises two issues on this appeal from that conviction.
I.
The appellant contends that the trial court erred in admitting evidence of prior sexual contact between the appellant and the victim.
The indictment charged that the appellant, “being sixteen years of age or older, did subject to sexual contact J.R., who was less than twelve years of age.” At the time of the incident, the appellant was 19 years old, and J.R. was eight years old.
J.R. testified that the appellant was her uncle, her mother’s brother. She stated that, in August 1988, the appellant came into the room where she was sleeping and rubbed her “private parts.” On direct examination, the prosecutor asked J.R. if she was enrolled in school when she told her stepmother about the incident. J.R. replied, without objection, “The first time or the second time?” Later, during her direct examination, she was asked and testified *951 that the appellant had done “that” to her before. The trial court sustained defense counsel’s objection and stated:
“I sustain it this time. We are going to create problems on procedure. Anything that comes out where it happened before, he can call her back and put her on again. Are you thinking with me? I don’t know where you’re going. Remember, I don’t know the total evidence. I can keep it out at this point. It is out if he answered.
“Ladies and gentlemen, don’t consider her answer on had this happened before at this time.
“Now, you understand, Mr. Collins, the door can be opened for everything. You can call her back, and other witnesses, whatever.”
On cross-examination of J.R., defense counsel made a rather detailed inquiry into whether, in June 1987, J.R. had accused Oscar Hartzog of “touching her” and whether she had recanted her story after Hartzog had been arrested. J.R. testified that she did not remember any such incident. Defense counsel asked J.R. if she remembered “telling in 1988, around August 1988,' telling your grandpa, Ray, Sr., or Big Ray, that Michael and John [J.R.’s stepbrothers] had been doing dirty things with you.”
On direct examination, Mrs. R., J.R.’s stepmother, testified, without objection, that J.R. “started crying and told me that David had been bothering her again.” She repeatedly testified without objection that J.R. complained to her that the appellant was either “bothering her again” or “doing it again.” However, the trial court would not allow the prosecutor to elicit evidence of the prior episode and sustained the objections of defense counsel to the prosecutor’s question “Had she ever indicated to you a problem of that nature before?” and the response of Mrs. R. that that was not the first indication she had had of sexual misconduct and that J.R. “had told [her] previous episodes — ”
On cross-examination of Mrs. R., defense counsel inquired into the fact that J.R. had made a complaint in 1987 about a man in Ozark that had grabbed her. He also questioned Mrs. R. about whether J.R. had made a complaint about her sons, Michael and John, doing “dirty things” to her.
On the prosecutor’s direct examination of J.R.’s father, the following occurred:
“Q. Do you remember an incident that happened in 1984 concerning David Screws—
“MR. COLLINS [defense counsel]: I object to this line of questioning.
“THE COURT: Overruled. Mr. Collins, you opened this up on cross-examination with the present Mrs. [R.], if you recall, at Ozark. I will let him go into anything that is relevant to show — Overrule the, objection.
“MR. COLLINS: In 1987 in Ozark, not before.
“THE COURT: I will let him go into anything concerning the defendant, if any, and the young [J.R.] here. Overruled.”
Mr. R. then testified to the incident of sexual misconduct involving the appellant and J.R. that occurred in 1984 when J.R. was four years old. He stated that at that time he and J.R.’s mother agreed that the appellant should not be left alone with the children.
On cross-examination, defense counsel elicited Mr. R.’s testimony that the 1984 allegations involved the appellant and his brother Wesley, and that after a full investigation, no charges were brought. Defense counsel questioned Mr. R. about the 1988 incident of the alleged sexual abuse of J.R. by Oscar Hartzog in Ozark. He also questioned him about alleged sexual misconduct involving Michael and John.
Without regard to whether the appellant “opened the door” for such testimony, the testimony of the past sexual contact between the appellant and the victim was properly admitted into evidence.
“[W]here ... a defendant is charged with the first degree rape of his minor daughter, evidence establishing that he had raped and/or committed acts of sexual abuse toward her prior to or subsequent to the offense for which he is *952 charged, is admissible to prove his motive in committing the charged offense. Such evidence tends to establish the inducement (i.e. unnatural sexual passion for his child) that led him to rape or molest her.”
Bowden v. State, 538 So.2d 1226, 1235 (Ala. 1988). Compare Watson v. State, 538 So.2d 1216, 1222-1223 (Ala.Cr.App.1987). “[I]n a carnal knowledge case the prosecution may introduce proof of sexual relations between the accused and the prosecu-trix before and after the act on which the prosecution is based” provided that those other acts “ ‘are [not] too remotely related ;.. in point of time, to be without probative force.’ ” Deason v. State, 363 So.2d 1001, 1005 (Ala.1978) (emphasis omitted). “Similar sexual offenses with the same person are admissible on the explanatory issue of showing intimacy between the parties.” Hunt v. State, 44 Ala.App. 479, 480, 213 So.2d 664, 665, cert. denied, 282 Ala. 727, 213 So.2d 666 (1968). Considering all the circumstances of this case, we do not consider the 1984 incident too remote to be without probative force.
II.
J.R., the victim, was the first witness for the prosecution. At the beginning of the second day of trial testimony, defense counsel requested a mistrial based on the failure of the State to disclose a tape recording of J.R.’s statement to Officers James Allison and Anthony Dotson at the Cullman County Sheriff’s Office on August 18, 1988, which counsel contended was inconsistent with her testimony at trial. The prosecutor responded that he had not listened to the tape, and stated, “[0]bviously, we didn’t know what the little girl was going to testify to.... [Defense counsel] knew about it as quick as I did. I didn’t know what she was going to testify until she took the stand on Tuesday morning.”
The tape recording was then played for the attorneys. The trial court then denied the appellant’s motion for a mistrial.
Although J.R. was not recalled to the witness stand, the tape recording was played for the jury during the presentation of the appellant’s defense.
The appellant filed an unverified motion for new trial in which he alleged that the J.R.’s tape recorded-statement “was substantially inconsistent with the statements complainant had made at [trial].” There is nothing in the record to support this specific allegation. The motion for new trial was denied without an evidentiary hearing.
“Impeachment evidence ... as well as exculpatory evidence, falls within the Brady [v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)] rule....
[[Image here]]
“... [Suppression of evidence amounts to a constitutional violation only if it deprives the defendant of a fair trial.... [A] constitutional error occurs, and the conviction must be reversed, only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial.”
United States v. Bagley, 473 U.S. 667, 676, 678, 105 S.Ct. 3375, 3380-3381, 87 L.Ed.2d 481 (1985). See Ex parte Womack, 541 So.2d 47 (Ala.1988).
The record does not show that the prosecutor had knowledge that the victim’s tape-recorded statement could be used to contradict or impeach her trial testimony until the victim testified at trial. The prosecutor’s statement that he did not listen to the tape until it was played in the courtroom is not contradicted. “It is true that under Brady the good faith of the prosecution in not disclosing information is irrelevant, 373 U.S. at 87, 83 S.Ct. at 1196-97, but Brady does require that the information requested by a criminal defendant be known to the prosecution. United States v. Agurs, 427 U.S. 97, 103, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976).” Ex parte Cammon, 578 So.2d 1089, 1091 (Ala.1991).
We have reviewed the transcript of the tape recording and find that it is not as contradictory of J.R.’s trial testimony as the appellant alleges, especially considering the fact that the witness is an eight-year-old child. The tape recording is, in fact, highly incriminating to the appellant. Af *953 ter comparing the testimony and the statement of the eight-year-old victim, we conclude that the “delayed” disclosure of the tape recording in no way undermines our confidence in the outcome of the appellant’s trial. Because it does not appear that the prosecutor could have known that J.R.’s trial testimony would differ from her tape-recorded statement to the investigating officers, this case is governed by the principles set out in Ex parte Pate, 415 So.2d 1140, 1144 (Ala. 1981):
“[T]he general rule [is] that an accused is not entitled to discover statements of government witnesses before trial.
“The rule of discovery is different where a prosecution witness has testified on direct examination in the trial of the case.
“In such cases, the defendant, upon laying a proper predicate, is entitled to have the Court, at least, conduct an in camera inspection as outlined in Palermo v. United States, 360 U.S. 343, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959). The trial court could determine initially (1) whether the statement made by the witness before trial differed in any respects from statements made to the jury during trial, and (2) whether the statement requested was of such a nature that without it the defendant’s trial would be fundamentally unfair.” (Footnote omitted.)
The appellant’s motion for a mistrial was properly denied.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.