The appellant, Kelly Joseph Sparrow, was charged in a two-count indictment with sexual abuse in the first degree and sodomy in the first degree. He was convicted of both offenses and was sentenced to ten years' imprisonment on the sexual abuse conviction and to 25 years' imprisonment on the sodomy conviction, with the sentences to run consecutively. The appellant raises five issues on this appeal from those convictions.
 I.
The prosecution proved that the appellant sexually abused and sodomized the female victim over a two-year period from March 1989 to March 1991, when the child was from five to seven years old. The trial court properly required the prosecution, at the conclusion of its case-in-chief, to elect the particular incident upon which the sodomy charge (Count II of the indictment) was based. The Attorney General does not question the propriety of requiring the election.
 "The doctrine of election operates to protect a defendant from being prosecuted for more than one offense in the same count of an indictment. Where the evidence discloses two or more offenses growing out of distinct and separate transactions, a court should grant a timely motion to require the State to elect."
Watkins v. State, 36 Ala. App. 711, 63 So.2d 293, 293-94 (1953).
 "The need for election arises where there is but one count charging a single offense, but the proof shows more than one instance of that offense. The cases of Deason v. State, 363 So.2d 1001 (Ala. *Page 221 
1978), and Reed v. State, 512 So.2d 804
(Ala.Cr.App. 1987), stand for the proposition that when the State has charged the accused with one offense in one count of the indictment, but has presented evidence that the accused committed that offense several times on several different dates, the State, upon proper motion, is required to elect the date of the offense on which it seeks a conviction."
J.D.S. v. State, 587 So.2d 1249, 1256 (Ala.Cr.App. 1991).
Deviate sexual intercourse, as defined in Ala. Code 1975, § 13A-6-60(2), is an essential element of the offense of first degree sodomy, see § 13A-6-63. The victim was seven years old at the time of trial. In regard to this element, she testified on direct examination that the appellant put his tongue on her "front private," (R. 97). In response to defense counsel's questions regarding the "last time" she had "a bad touch from [the appellant]," the victim stated that the appellant did not put his mouth on her private "the last time" (R. 101).
Defense counsel interrupted his cross-examination of the prosecutrix to make his motion for an election. Immediately before cross-examination was resumed and without ruling on the motion, the trial court stated: "Now, as far as when the other [the sodomy] took place, that hasn't been proved to the Court's satisfaction as to the time or the place sufficient for the defendant to defend against, so I think you would need to go further to proof [sic] the sodomy part as well." R. 110.
Following that comment, the prosecutrix testified, on redirect examination, that "the last time" the appellant was with her he put his tongue on her. R. 112. On recross-examination, she corrected herself and testified that "the last time" "he didn't put his mouth to [her] private." R. 113.
Then, on redirect examination, the following occurred:
 "Q. [Prosecutor:] . . . [J]ust tell me when it was the last time that he did that, that he put his tongue on you.
"A. I don't remember.
". . . .
 "Q. He did it almost every time he was messing with you?
"A. Yes.
"Q. Put his tongue on you?
"A. Uh-huh.[1]
 "Q. Okay. And the last time that he was with you, the last time that he did all of this stuff to you, the very last time that you remember, did he put his tongue on you then?
"A. Not the very last time.
 "Q. Not the very last time. What about the time prior to that?
"A. Huh-uh.
 "Q. How about the time prior to that, the time — the night before 'Mawmaw' chased him out?
"A. Huh-uh.
 "Q. Okay. But, he had done it every other time before that?
"A. Uh-huh." R. 113-14.
Mary Cowan Schaffeld, a case worker with the Barbour County Department of Human Resources who interviewed the victim, testified that the victim told her that the "acts" occurred "[f]rom a period of time somewhere around March of 1989 until March of 1991" (R. 123); that "[t]here was partial penetration to the vagina and to the anal areas, also oral sex"[2] (R. 124); and that the sexual abuse "happened several different times during the year, not more than ten times but more than five, but she did not know the dates." R. 134.
After the State had rested its case, defense counsel argued that "on sodomy I can't pinpoint enough to defend on." The *Page 222 
trial court responded: "You are talking about her being five years old at the time, and you have a period of time that it happened, though. It is my understanding that you can't alibi that, and I'm sorry, but you can't hold them to prove exactly what date, time, and place it happened on." R. 141. Then the trial court required the prosecution to elect as to which act of sodomy it was relying upon for a conviction. The prosecutor indicated that it was the "[n]ext to the last time any kind of sexual act took place." R. 142. On that occasion and in making the election, the prosecutor made the same mistake of fact the attorney general now makes on appeal in asserting that the victim "said it ["the insertion of the tongue"] happened every time but the last time." R. 142.
Despite the proof that the victim had been sodomized and sexually abused, the prosecution failed to prove that any deviate sexual intercourse occurred on the "next to the last time" the appellant allegedly sexually abused the victim. Therefore, the appellant's conviction for sodomy on count two of the indictment in Barbour County case CC-91-76 is reversed and rendered.
 II.
However, the appellant's conviction for sexual abuse in the first degree as charged in Count I of the indictment is affirmed. The appellant's argument that the prosecution failed to prove the venue of the sodomy offense is rendered moot by the reversal of his sodomy conviction on another ground. The appellant's argument that the trial court erred in allowing the victim's mother to testify as to how she felt when she heard that the appellant had sexually abused her daughter is not supported by the record which, instead, shows that the victim's mother testified that the appellant once asked her how she would feel if her daughter had been sexually abused. R. 41. Department of Human Relations case worker Schaffeld was properly allowed to testify that in her opinion the victim "ha[d] been sexually abused.". R. 130. Lee v. State,565 So.2d 1155 (Ala.Cr.App. 1990). The appellant's argument that the evidence does not support his conviction for sexual abuse is without merit.
For the reasons set forth in Part I, the appellant's conviction for sodomy in the first degree is reversed and rendered. The appellant's conviction for sexual abuse in the first degree is affirmed.
REVERSED AND RENDERED AS TO COUNT II; AFFIRMED AS TO COUNT I.
PATTERSON, P.J., and TAYLOR and McMILLAN, JJ., concur.
MONTIEL, J., concurs in part and dissents in part with opinion.
[1] From the context in which it appears in the record, it is apparent that the court reporter used "uh-huh" to indicate an affirmative response, and "huh-uh" to indicate a negative response.
[2] After this statement by the witness, the appellant objected and the trial court instructed the jury: "The only purpose for which you can accept the testimony that was just given is to prove that the statement was made. In other words, to prove that the little girl made the statement. You can't accept it as proof that the act occurred." R. 124.