PATTERSON, Retired Appellate Judge.
The appellant, R.L.G., Jr., appeals from his convictions for sexual abuse in the first degree of his sister C.G.; sodomy in the first degree of his daughter A.G.; and sexual abuse in the first degree of A.G. For the sexual abuse convictions, the appellant was sentenced to two three-year sentences, which were split and he was ordered to serve one year on each sentence, consecutively. For the sodomy conviction, he was sentenced to 15 years, and was ordered to serve 3 years, which were to be served consecutively to the 1-year incarceration portions of the sentences for sexual abuse. The balances of the three sentences were suspended, and the appellant is to be placed on five years’ probation after serving the incarceration portions of the three sentences.
The sole issue presented on appeal is whether the trial, court erred in failing to require the prosecution to elect what incidents it was relying on to prove the crimes charged and in failing to give the jury guidance as to which incidents were the subject of the indictments. An understanding of the nature of the evidence presented to the jury is necessary to decide this issue. The testi *350 mony and evidence elicited at trial is as follows:
C.G., who was 17 years old and a high school senior at the time of trial, testified to the following: She is the appellant’s sister, and he is 20 years her senior. When she was six or seven years old, the appellant, who at that time was in his 20s, took her in her bedroom purportedly to tell her about a movie, either Godzilla or King Kong. However, the appellant locked the bedroom door, set her on her television cabinet, and started “feeling” between her legs over her clothes. Other children, including S.S., her niece and friend, were in the house at this time. S.S. testified that C.G. and the appellant were alone in C.G.’s bedroom with the door locked for about 30 minutes and that she knocked on the door and told them to come out, but no one responded. C.G. also remembers a time when the appellant was on top of her while she was lying on her bed on her stomach. Neither she nor the appellant was clothed below the waist. The appellant attempted to put his penis into her private parts, urging her, “Let’s try one more time.” She could not recall if this act was on the same occasion that she and of the appellant were locked in her room, but she testified that it was close in time to that incident— when she was six or seven years old. On another occasion, while she and the appellant were playing hide-and-go-seek with other children, the appellant asked her to hide with him. While they were hidden in their father’s green Ford truck, the appellant asked her to put her mouth on his penis and offered her a dollar if she would do it. On a later occasion, while the appellant was home visiting from Georgia, where he was living at the time, he accosted C.G. during the middle of the night, while she was on the living room sofa, and put his hands in her panties. She pretended to be asleep. When she was approximately 11 years old, she rode to the store with the appellant and his 3-year-old son. On a dirt road less than one-half mile from their home, the appellant stopped the ear, put her on his lap, and felt her private parts under her panties while asking her if anyone else had “done this before besides him.” During this act, the appellant’s three-year-old son was in his ear seat. When C.G. was about 13 years old, before their grandmother died during “the snow in ’93 or ’94,” C.G. was lying on the sofa at her grandmother’s house, where she was to sleep that night, when the appellant returned to the room after everyone had gone to bed, and touched her arm. She pushed him away, and he asked if he “could do the same thing to [her] that he used to do.” She refused, telling him that she was “taking a stand,” that he was “sick in the head,” and that if he wanted “it,” to get “it” from his wife who was asleep in a bedroom. He responded that he knew that he needed help. He did not abuse her any more.
On the last day of school in May 1994, C.G. went to her school counselor and discussed a personal problem with her. According to the counselor, C.G. was crying and very upset. During the summer after this conversation with her school counselor, C.G. spoke with A.G. twice because she “didn’t want the same thing to happen to [A.G.].” Her concern for A.G. was caused by her observations of “the way [A.G.] acted around” the appellant. During these two conversations, A.G. talked about what the appellant had done to her. S.S. was present during the second conversation. (S.S. testified that, in this conversation, A.G. made a detailed complaint regarding the appellant.) After these two conversations and, in August 1994, when C.G. returned to school from summer vacation in August 1994, she went back to her counselor and told her, in discussing the same subject discussed in their May conversation, what A.G. had told her. She told the counselor that she was determined to “do something about it,” so the counselor notified a counselor at Asbury School, the school A.G. attended. (At trial, the counselor testified that C.G. was a very good student and had a very good reputation at school.)
As a result of C.G.’s discussion with her counselor, Diane DuBoise, a child protective service investigator for the Department of Human Resources, interviewed A.G., who at that time was five years old and in kindergarten. Ms. DuBoise’s interview was structured so that she could elicit spontaneous answers, untainted by leading questions. At the beginning of this interview, A.G.'stated *351 that her father had hurt her. When she was asked how he had hurt her, she put her hand between her legs. She also stated that this occurred when her mother was at work and her brothers were not home, that it happened on the bed in her room, that he would put his hand in her panties, and that no one other than her father had done this to her. When asked to indicate what he did, she made gestures of a type not reflected on the record, except her first indicating one finger.[1] When asked how she felt about her father’s actions, she replied, “It hurts and I want it to stop.”
Approximately four days after this interview, Ms. DuBoise interviewed A.G. again, at A.G.’s mother’s request. After A.G. indicated that she did not want to talk about the subject of their prior conversation, Ms. Du-Boise asked A.G. if she would be more comfortable drawing about what they had previously discussed. A.G. said that she would, and she picked from anatomically correct drawings (four of the female body and four of the male body in various stages of physical development: preschool, grammar, teen, and adult) front and back drawings of a grammar school-age female as the one resembling her and front and back drawings of an adult male as the one resembling the person who she said had hurt her. On the female drawings, she marked an “X” on the chest, explaining that “daddy touched me there”; an “X” on the vagina, explaining that “daddy rubs me there”; and an “X” on the back, explaining that “daddy kissed me here.” She put, on the male drawing, “X’”s on the chest, on a hand, on the knees, and on the penis, explaining, “This is where daddy made me touch him.” To the question whether her father kissed her anywhere other than her back, A.G. pointed to the belly button on the female drawing, to the vagina and to the hands, explaining in regard to her hands, “He sucks my hands.” She also stated, “He sucked on my ear and put his tongue in my ear.” At this point, A.G. was asked when and how did her father do these things. She answered that she would usually be in her bed; that her mother would be at work and her brothers outside; and that he would take off her shirt and panties while he was rubbing her. When the investigator tried, to “determine time,” A.G.’s answer as relayed by Ms. DuBoise was: “[I]t usually happened in the afternoon while ... her brothers were outside riding the bikes. And sometimes it would happen at night and sometimes in the morning, but usually it was just in the afternoon.” A.G. further stated that “it” would sometimes happen while her father was bathing her: he would wash her with his hand and “put his finger in” her. She also stated that “daddy tries to get me to touch him.” She gave the following explanation, as related in Ms. DuB oise’s testimony, when asked what she meant:
“She says, ‘He tries to put’ — and then she got real quiet. And I’d asked her, I said, ‘He tries to put what?’ And she said — she pointed — at that point she was real quiet, and she pointed to the penis on the drawing. And I said, ‘He tried to put what?’ She said he tried — she would ‘He tries to put’ — and she pointed to the penis and then she pointed to her mouth. And I said, ‘What does he do when he does that?’ And she said, ‘He moves.’ ... And I said, ‘Well, how does he move?’ And she — she showed me by moving her hips and said, ‘This is what.daddy does.’ I asked her how it felt and she said, ‘It hurt.’ I said, ‘Where did it hurt?’ ... [S]he went ‘Here.’ She pointed to her throat.”
After A.G. answered “no” to whether she had ever noticed anything come out of the penis, the investigator concluded the interview because A.G. was “kind of getting upset.” The following testimony of Ms. DuBoise reflects what next happened, as the investigator was getting ready to leave:
“A. I was closing up my notebook and I was getting ready to leave and [A.G.] laid down on the floor. And I said, What are you doing?’ She said, ‘This is daddy.’ She was lying on her back.
*352 “Q. She didn’t do that in response to any question?
“A. No. I was — was leaving. And I asked her, What are you doing?’ And she said, ‘This is daddy.’ And I said, ‘Was daddy lying on his back?’ And she said, ‘Yes.’ ...
[[Image here]]
“A. At that point I said, “Well, where are you?’ And she said, ‘I’m on top of daddy like this.’ And she got up and she got on all fours. And I said, ‘Well, what happened when you were like that?’ She said, ‘This is how I laid on daddy.’ And I said, ‘What does he do?’ She goes, ‘He rubs’ — ‘He grabs my butt and rubs it real hard on his private part.’ And at that point I said, ‘Well, what were you wearing?’ She said, ‘Nothing.’ ... I said, ‘Did anything else happen?’ And she — she turned her body the other way, and she said, ‘Well, sometimes I put my private on his face. And I have my mouth on his private.’ And I said, ‘What happens?’ She goes, ‘He licks me and I lick him.’
[[Image here]]
“A. ... And I asked her how she would feel, you know, not being around her father at that time, and she said, Til feel real happy.’ ”
Between Ms. DuBoise’s two interviews with A.G., Ms. DuBoise also talked with C.G. at C.G.’s high school. They talked about what A.G. had told C.G. and about what the appellant had done to C.G.
Shortly after the allegations were made against the appellant, the appellant’s wife took A.G. and her other two children to stay with her father and stepmother. The stepmother testified that while they were staying at her house, she was giving A.G. a bath when A.G. stated, “MaMa, don’t look at my private part.” When she assured A.G. that she was not looking at A.G.’s private part, A.G. stated, “My daddy does.”
Dr. David R. Wilson, a clinical psychologist who has assessed or treated 1,500 to 2,000 sexual abuse victims as a specialist in sexually abused children and adults, interviewed A.G. 11 times in his treatment of her, beginning in July 1995. He testified that he considers her to be intelligent, verbal, and articulate. During their sessions, A.G. was very comfortable with him as long as he did not ask specific questions about the appellant, but when he asked questions about her father, her “very” typical response was “I don’t remember.” However, as recently as one week before trial, she stated while pointing to her vaginal area that “daddy hurt me.” He testified that she has not gone into more detail than that in their interviews. From his experience, he believed such reactions are very common for a sexually abused child. In his assessment of A.G., he “was very struck by the amount of detail that she gave within the interviews to Ms. DuBoise.” From their visits and the history he obtained, he has concluded that A.G. very likely has been sexually abused.
A.G., who was six years old at the time of trial, testified at trial that she remembered talking with Ms. DuBoise once when she was in kindergarten about something that her father had done to her, but she could not remember anything more specific about their conversation. She also testified that she loved her father and that he had never done anything mean or hurtful to her. Ms. Du-Boise testified that on the morning the trial started, A.G. indicated to her that she could not remember the contents of their conversation, that she was afraid to testify, and that she was afraid that she was going to get someone in trouble. Ms. DuBoise also testified that, based on her experience with child victims, it is common for a child to “come back and say that they don’t remember” and that A.G.’s mother, with whom A.G. has been residing, believes that the appellant is not guilty of the alleged offenses.
The appellant’s mother (who is also C.G.’s mother and A.G.’s grandmother) testified that C.G. has always been a good child; that she knows of no reason that C.G. would fabricate her allegations against the appellant; and that she believes C.G.
In the appellant’s attempt at trial to discredit the allegations made by A.G. and C.G., he structured his cross-examination of the prosecution’s witnesses so as to cast doubt upon the victims’ credibility.
*353 For example, during Ms. DuBoise’s cross-examination, the defense attorney elicited evidence that two persons interviewed in her investigation told Ms. DuBoise that A.G. had a vivid imagination and told “wild” stories; that she had found no independent evidence to substantiate A.G.’s allegations; and that because she did not tape-record the interviews, the record is highly dependent upon her subjective view of the interviews. Defense counsel, in an attempt to cast doubt on the credibility of A.G.’s statement to Ms. DuBoise, questioned several witnesses about the implausibility of A.G.’s allegation that the appellant put his entire hand in her vagina. In regard to Dr. Wilson’s conclusion that A.G. had been sexually abused, defense counsel elicited on cross-examination, that when Dr. Wilson asked a question “about a private touch, she denied ever having been touched by anyone”; and that Dr. Wilson had stated in his report, “Often when I have children who are abused, they will tend to see and project themes of abuse, but [A.G.] did not do this.”
The defense attempted to impeach C.G. by eliciting her testimony that although she had always had a close. relationship with her mother, she did not tell her mother of the abuse until she was 12 years old and that, although someone else was present or nearby during the occasions of abuse, C.G. never alerted anyone that she did not “like what was going on.” He also questioned her allegation, made to her mother, years after the fact, that a next door neighbor had attempted to rape her when she was a preschooler and also her allegation that one of the appellant’s sons had made advances to her. He also emphasized C.G.’s failure to recollect more details surrounding the occasions of abuse, e.g., in regard to the first incident she testified to, how long they stayed in the bedroom, where their parents had gone, when the other children left the residence.
Defense witness Dr. John Packard, Jr., a pediatrician who testified that in his 19 years of practice he has examined between 300 and 600 children to determine whether they had been sexually abused, examined A.G. on October 5, 1994. He had been given no details of A.G.’s prior complaints of abuse. During the 20 to 25 minutes he spent with her, she denied that anyone had touched her genital area, had “made her do anything that she knew she wasn’t supposed to do,” or had hurt her. He considered that, during.their encounter, she was forthright in her answers, she was not hiding anything, and she had not been coached. His,examination of A.G. was “totally normal,” i.e., it showed no evidence of “physical abuse or sexual physical abuse.” He explained at trial,
“In a five-year-old child, even the insertion of a finger would result in physical changes that would be present for a considerable period of time if not permanently.... I do not think that she had been penetrated by a finger, a penis, or a hand. I just don’t think that that is conceivable with the physical exam as it was.”
Brent Ryder, a radio announcer and also an attorney, testified that the appellant had a good general reputation in the'community for truth and veracity.
The appellant’s wife testified that during the 11 years that she and the. appellant had been together, she usually went with the appellant to visit his parents; that during six months in 1985, they visited his parents less than once a month and that she does not know how many times during those visits the appellant was alone with C.G.; that the following year, they visited a few times, with the appellant’s parents there each time; that during the next three to four years, they visited a total of only four or five times and that she could not recall a time during that period that the appellant had visited his parents without her; that thereafter, they visited less than once a month; that in all of their visits, she was never aware of the appellant and C.G. being alone and never saw anything unusual in regard to their visits or to C.G.; that for most of the 11 years that she was been living with the appellant, she worked outside their home; that she has never seen anything unusual about the conduct of A.G. and the appellant; that C.G. spent about an hour alone with A.G. in August (the month of A.G.’s fifth birthday) before the allegations surfaced; and that she would have no reluctance in taking A.G. back to live in the *354 appellant’s home if not for the fear that she would lose custody of J ..G. if she did.
On cross-examination, the appellant’s wife testified that she did not believe what A.G. told Ms. DuBoise; that A.G. told her that the appellant had had no sexual contact with her; that she had'no choice in taking A.G. to Dr. Wilson; that Dr. Wilson had told her that there was a possibility that something had occurred to A.G. but that A.G. did not talk about it; that she thinks that, because she was jealous, C.G. told A.G. to say that the appellant had put his finger on her vagina; and that A.G. told her that C.G. told A.G. what to say.
The appellant testified that during the first six months he had lived with his wife, they visited his parents a couple of times a month, during which C.G. was occasionally present; that the following year, they visited occasionally; that during the next there years, they visited maybe four times; and that thereafter until the allegations were made, they visited occasionally. He further testified that he never went to his parents’ home without taking his family or when no adults were there and, finally, that none of the sexual misconduct alleged by C.G. in fact occurred.
On cross-examination, the appellant testified that he has never been alone in his parents’ home with C.G. and his niece S.S.; that A.G. told him that C.G. told her to make up her allegations against him; that he has never touched A.G. inappropriately; and that he has no explanation for the allegations made against him by C.G. or for the adverse testimony of S.S. and Ms. DuBoise.
Upon this evidence, the jury reached guilty verdicts after only 15 minutes of deliberation.
In regard to the issue asserted, the record shows that before trial, the appellant moved that the prosecution be required to elect one specific incident for each crime charged. The trial court correctly noted that the proper time for such motion is at the close of the prosecution’s ease. After the prosecution rested, the following occurred in regard to the appellant’s motion to elect:
“MR. JOHNSON [the prosecutor]: Judge, on the election, as to the sexual abuse in the first degree against — concerning [C.G.], Judge, we would just elect the incident — that incident that occurred with the situation where there appeared to be an attempted rape, Judge. I think that particular incident, we can elect to satisfy all the elements, Judge.
[[Image here]]
“MR. JOHNSON: All right. And as to [A.G.], Judge, on a motion to elect, I don’t think there has been a whole lot of incidents talked to, Judge. I think pretty much we are talking about, you know, an incident that occurred, particularly sexual abuse, and the sodomy, Judge, and I really don’t think there is anything to elect there, is what I’m telling the Court.
“THE COURT: I’m in accord....
[[Image here]]
“MR. BAKER [defense counsel]: Judge, Diane DuBoise described a number of incidents. Are we to have to defend all of those as a single count? I don’t understand.
[[Image here]]
“MR. JOHNSON: But my response is, again, I don’t think that there is any one particular — it’s not as it was in [C.G.’s] testimony, Judge, that there was this incident, and this incident, and this incident. I’ll remind the Court, Judge, that we’re talking about a five- or six-year-old child here and she said, ‘My daddy did these things to me.’ And she hasn’t indicated, Judge, that it happened once or twice or 10 times, Judge. I don’t think that there are a number of things that they have to defend against, Judge, as opposed to a situation where it was, like, with [C.G.], Judge, where she told the Court this happened, and this happened when I was such and such age, and this happened and this happened when I was sucb and such age, as opposed to the testimony in this case, Judge.
“THE COURT: Yeah. I think the Defendant’s thrust is that probably that it did not occur at all with [A.G.]. So to require the State to say one particular time, which the child has never indicated a particular time, would be putting the State to too heavy a burden.”
*355 As the above,quoted material shows, the prosecution did in fact elect an alleged incident upon which the jury was to consider the charge of sexual abuse of C.G. However, the record fails to show that the prosecution’s election (“that incident that occurred with the situation where there appeared to be an attempted rape”) was conveyed to the jury in the court’s oral charge. However, defense counsel failed to object to any omission by the trial court in its oral charge; defense counsel announced that he had no objections to the charge and he did not submit any requested written charge. See Ala.R.Cr.P. 21. Compare R.A.S. v. State, [Ms. CR-95-0102, July 3, 1997] — So.2d - (Ala.Cr.App.1997) (trial court’s failure to instruct the jury as to the incidents elected by the prosecution where the issue was preserved by objection after the trial court’s oral charge was reversible error). Thus, the trial court’s failure to instruct the jury of the alleged incident of abuse of C.G. elected by the prosecution was not preserved for our review. Therefore, we need concern ourselves only with the trial court’s refusal to require the prosecution to elect the incidents it was relying on to prove the charged crimes against A.G.
The general law in Alabama in regard to elections is as follows:
“‘“The doctrine of election operates to protect a defendant from being prosecuted for more than one offense in the same count of an indictment. Where the evidence discloses two or more offenses growing out of distinct and separate transactions, a court should grant a timely motion to require the' State to elect.”
“‘Watkins v. State, 36 Ala.App. 711, 63 So.2d 293, 293-94 (1963).
“ ‘ “The need for election arises where there is but one count charging a single offense, but the proof shows more than one instance of that offense. The cases of Deason v. State, 363 So.2d 1001 (Ala. 1978), and Reed v. State, 512 So.2d 804 (Ala.Cr.App.1987), stand for the proposition that when the State has charged the accused with one offense in one count of the indictment, but has presented evidence that the accused committed that offense several times on several different dates, the State, upon proper motion, is required to elect the date of the offense on which it seeks a conviction.” “ ‘J.D.S. v. State, 587 So.2d 1249, 1256 (Ala.Cr.App.1991).’
“Sparrow v. State, 606 So.2d 219, 220-21 (Ala.Cr.App.1992).
“... [T]he Alabama Supreme Court in Ex parte King, 707 So.2d 657 (Ala.1997) (five Justices concurring, one Justice concurring in part and dissenting in part, and three Justices dissenting), declined to overrule or to make an exception to the long-standing doctrine of election, as enunciated in Deason v. State, 363 So.2d 1001 (Ala.1978), and Watkins v. State, 36 Ala. App. 711, 63 So.2d 293 (1953). The evidence upon which the jury found King guilty of the two charges of sexual misconduct involving his minor stepdaughter is specifically recounted in Justice Maddox’s dissent to the majority opinion (in which Chief Justice Hooper and Justice See concurred), 707 So.2d at 659:
‘“The evidence established one distinct instance in January 1994 in which King abused the seven-year-old daughter of his common law wife while the child was sleeping with King in her mother’s bed. However, evidence was also presented that King had sexually abused this stepdaughter five times— “three times ‘before Christmas’ and two times ‘after Christmas.’ ” King v. State, 707 So.2d 652, 653 (Ala.Cr.App.1996).’
“In upholding the settled caselaw, the majority stated:
“ ‘[T]he state says that one of the sexual abuse convictions can properly stand, because given that most of the evidence related to a single incident, there could be no doubt that the jury convicted King on one count on the basis of that incident. Accordingly, the state says, any error in failing to order an election related to the conviction under Count I ... was harmless error.
“‘However, it is pure speculation to suggest that that single incident was the basis of the jury’s conviction on one *356 count of sexual abuse. There was evidence at trial of five incidents of sexual abuse. Indeed, the state itself contends that “other incidents of sexual abuse were proven by the prosecutor in this case.” There is simply no way to know which incident or incidents of abuse underpinned the jury’s verdict.’
“707 So.2d at 659. In so holding, the Court implicitly rejected the dissent’s urging that the Court ‘approach child molestation cases more carefully, in order to strike a proper balance between the defendant’s rights, as outlined in Deason, supra, and the victim’s age and inability to recount every detail of each incident of abuse.’ 707 So.2d at 660.
“... See also Deason v. State (where the prosecutor directed much of his proof of the charged offense of carnal knowledge to a specific occasion, but further proved additional such occasions, the prosecutor should have been required to elect which incident was the subject of the indictment); Reed v. State, 512 So.2d 804 (Ala.Cr.App. 1987) (where the victim, in a prosecution for sexual abuse, testified as to several separate incidents of sexual molestation by the defendant, the prosecution should have been required to elect a single incident upon which a conviction was being sought).”
R.A.S., — So.2d at-.
The facts before us do not lend themselves to a straightforward application of the general law of election as it currently stands in Alabama: the evidence of the appellant’s alleged abuse of A.G. presents absolutely no “distinct and separate transactions” upon which to apply the general law and require an election.
“The term ‘elect’ implies a knowledge of facts which go to make up two or more offenses; ... to hold [the prosecutor] to have elected to proceed for a certain offense, he must have learned enough to enable him to individualize the transaction, and then pursue his inquiry with a view of learning the details and particulars of the act or transaction thus individualized.”
Jackson v. State, 95 Ala. 17, 18, 10 So. 657, 657 (Ala.1892). The very nature of the evidence in this case, as discussed below, is dictated by the nature of the circumstances of the alleged abuse: abuse upon a young child by an abuser residing with the child, thus an abuser who could perpetuate the abuse so frequently and in so many locations that the young child loses any frame of reference in which to compartmentalize the abuse into “distinct and separate transactions.” Such evidence of abuse has been termed “generic evidence.”
Justice Maddox recognized this type of evidence in his dissent in Ex parte King, 707 So.2d 657 (Ala.1997), when he quoted the following from State v. Brown, 55 Wash.App. 738, 746-47, 780 P.2d 880, 885 (1989), review denied, 114 Wash.2d 1014, 791 P.2d 897 (1990):
“ ‘Particularly when the accused resides with the victim or has virtually unchecked access to the child, and the abuse has occurred on a regular basis and in a consistent manner over a prolonged period of time, the child may have no meaningful reference point of time or detail by which to distinguish one specific act from another. The more frequent and repetitive the abuse, the more likely it becomes that the victim will be unable to recall specific dates and places. Moreover, because the molestation usually occurs outside the presence of witnesses, and often leaves no permanent physical evidence, the state’s case rests on the testimony of a victim whose memory may be clouded by a blur of abuse and a desire to forget. See People v. Luna, 250 Cal.Rptr. 878, 884, 204 Cal. App.3d 726, quoting People v. Martinez, 243 Cal.Rptr. 66, 73, 197 Cal.App.3d 767 (1988) (Hamlin, J., dissenting).’ ”
707 So.2d at 661. As the court in People v. Jones, 51 Cal.3d 294, 305, 270 Cal.Rptr. 611, 616, 792 P.2d 643, 648 (1990), aptly observed:
“A young victim ..., assertedly molested over a substantial period by a parent or other adult residing in his home, may have no practical way of recollecting, reconstructing, distinguishing or identifying by ‘specific incidents or dates’ all or even any such incidents. (Indeed, even a mature victim might understandably be hard pressed to separate particular incidents of *357 repetitive molestations by time, place or circumstance. See People v. Luna (1988) 204 Cal.App.3d 726, 748, 250 Cal.Rptr. 878.)”
It is exactly because of the nature of this “generic” evidence of abuse that the prosecution of resident child molesters presents unique challenges rarely present in prosecution for other crimes. “It is in the context of [sexual molestation of children] cases that the issues associated with evidence of multiple offenses and jury unanimity usually arise.” Brown, 55 Wash.App. at 746, 780 P.2d at 885. Moreover, “[c]hild molestation cases frequently involve difficult, even paradoxical, proof problems.” Jones, 51 Cal.3d at 305, 270 Cal.Rptr. at 616, 792 P.2d at 648. Cf. Seales v. State, 581 So.2d 1192, 1193 (Ala.1991) (in its review of the appellant’s conviction for the rape of his séven-year-old stepdaughter, the court quoted with approval the following observation in Patrick v. State, 495 So.2d 112, 114 (Ala.Cr.App.1986), “ ‘[because of the language and communication difficulties of an underage victim, more than a few cases have dealt with the matter of proving what was formerly referred to as a “statutory rape’””); Phillips v. State, 668 So.2d 881, 884 (Ala.Cr.App.1995) (recognizing, in its review of a first-degree rape conviction of a nine-year-old victim, that the victim’s poor testimony, wherein she repeatedly stated that she could not remember, is representative of the problem noted above in Seales ).[2]
The ease before us demonstrates also the difficulty of requiring -a specific election where the evidence shows a continuing pattern of sexual abuse of young children. A.G.’s description of the alleged abuse offered no distinguishing characteristics identifying any separate and distinct incidents of abuse. Rather, the abuse “resulted] in an amalgamation of the crimes in the child’s mind,” People v. Luna, 204 Cal.App.3d 726, 748, 250 Cal.Rptr. 878, 890 (1988); thus “the child’s testimony [was] reduced to a general, and customarily abbreviated, recitation of what happened on a continuing basis,” id. Although the evidence that A.G. had been abused was convincing — the jury so concluded in 15 minutes of deliberation — we agree with the prosecutor and the trial court that the difficulty of isolating and identifying a particular incident for the jury’s consideration is manifest.
As noted above, the current law on election in Alabama is inapplicable to such generic evidence. This generic evidence distinguishes this case from King, the most recent case on election, which involved five specified occasions on which the charged sexual abuse could have occurred. Compare King, 707 So.2d at 659 (“the state does not argue that the prosecuting witness in this case could not in fact, recall and separate specific .incidents”). See Thomas v. People, 803 P.2d 144, 153 and n. 18 (Colo.1990) .(where the court distinguished People v. Estorga, 200 Colo. 78, 612 P.2d 520 (1980), which mandates an election when evidence of multiple child sexual assault acts are in evidence, by observing that in Estorga the victim was 10 *358 years old, as compared to the ages of the two victims in Thomas — the appellant’s daughter, who was three, and the other victim, who turned five during the period covered by the indictment — and that the occasions on which the charged abuse of the Estorga victim could have occurred were only four or five, as opposed to repeated abuse of the Thomas victims). We have found no case where either this court or the Alabama Supreme Court has addressed an election issue in the context of evidence of repeated sexual abuse by a resident molester of a young child who can recollect no distinguishing details of the multiple incidents of abuse. However, we find guidance in Justice Maddox’s dissent in King, in which Chief Justice Hooper and Justice See joined.
As Justice Maddox noted, one court has addressed the issue by carving out an exception to the election rule in “multiple act” child sexual abuse cases.
“[T]he Court of Criminal Appeals of Oklahoma has carved out this exception to the election rule: ‘[W]hen a child of tender years is under the exclusive domination of one parent for a definite period of time and submits to sexual acts at that parent’s demand, the separate acts of abuse become one transaction,’ * and ‘[s]ome situations which fall within the exception are when a continuous application of force is used and no reasonable doubt exists as to the occurrence of each act.’ Scott v. State, 668 P.2d 839 (Okla.Crim.App.1988), citing McManus v. State, 50 Okl.Cr. 354, 297 P. 830 (1931).
However, we find that an adoption of this continuing offense exception in Alabama would be contrary to the plain language of the Alabama Criminal Code and to caselaw interpreting the pertinent parts of the Code. Our foremost obligation is to ascertain and to give effect to the intention of the legislature, which is obtained primarily from the meaning of the language of the statutes themselves. See generally Sheffield v. State, 708 So.2d 899 (Ala.Cr.App.1997). The statutes proscribing the offenses of first degree sodomy and first degree sexual abuse, for which the appellant was convicted in regard to A.G., do not define these crimes as an uninterrupted and continuing course of conduct.[3] Nor do the statutes manifest a plain legislative intent that the two offenses be treated as such. Under our Code, multiple sex acts to minor children by resident abusers do not merge into a single continuing offense; the defendant can be convicted and punished for each separate act. This principle underlies every election case in Alabama involving sexual offenses committed by resident abusers against minor children. See, e.g., Ex parte King (five incidents of sexual abuse to the appellant’s seven-year-old stepdaughter by the appellant are treated as separate specific incidents); Deason v. State, 363 So.2d 1001 (Ala.1978) (the appellant’s repeated sexual abuse of his stepdaughter when she was 9 to 11 years old are separate incidents); Reed v. State, 512 So.2d 804 (Ala. Cr.App.1987) (five separate incidents of sexual molestation of the appellant’s seven-year-old daughter by the appellant are to be treated as separate, different incidents). See also Deason, 363 So.2d at 1005 (“That rule of evidence [that, in a carnal knowledge case, allows the prosecution to introduce proof of sexual relations between the accused and the prosecutrix before and after the incident on which the prosecution is based,] does not *359 create for carnal knowledge cases an exception to the rule of election which applies to all others.”). Moreover, in Hutchins v. State, 568 So.2d 395 (Ala.Cr.App.1990), in rejecting the appellant’s argument that the two charges of sodomy arose out of the same criminal act and thus he could not be sen: tenced for both, the court noted that the two sodomies occurred at different times and places.
Other courts, in reviewing their respective state’s statutory scheme, have also rejected the view that each distinct act in violation of a sexual offense statute does not constitute a separate offense, but rather can be aggregated with other distinct offenses to constitute a “continuing offense.” In State v. Snook, 210 Conn. 244, 555 A.2d 390, cert. denied, 492 U.S. 924, 109 S.Ct. 3258, 106 L.Ed.2d 603 (1989), the appellant was charged with two counts of “risk of injury to a minor”[4]: one count based on conduct alleged to have occurred between June 1979 and January 11, 1984, excluding January 19, 1983, and the other based on conduct alleged to have occurred on January 19,1983, the victim’s fifth birthday. In response to the appellant’s contention that the conviction on the latter count violated his protections against double jeopardy because, he argued, the statute proscribed not distinct and separate acts, but a continuing course of conduct, the court stated:
“Double jeopardy ‘prohibits not only multiple trials for the same offense, but also multiple punishments for the same offense. Brown v. Ohio, 432 U.S. 161, 165[, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187] (1977)_’ State v. Thompson, 197 Conn. 67, 72, 496 A.2d 1054 (1985). ‘Before the double jeopardy prohibition is triggered, however, it must appear ... that the crimes arose out of the same act or transaction.’ State v. Amaral, 179 Conn. 239, 242, 425 A.2d 1293 (1979). ‘If a violation of law is not continuous in its nature, separate indictments may be maintained for each violation. Thus, a distinct repetition of a prohibited act constitutes a second offense and subjects the offender to an additional penalty.’ 21 Am.Jur.2d, Criminal Law § 267. . ■
“In the present case, the separate counts alleging risk of injury to a minor arose out of separate acts. The ... information makes clear that the defendant was charged with violating [the statute] as a result of at least two separate transactions: any acts occurring between June, 1979, through January 11, 1984, excepting January 19, 1983; and the acts occurring on January 19, 1983. We disagree with the defendant that [the -first count] alleged ‘a violation of law continuous in nature,’ such that a separate count alleging a violation of [the statute] on a specific date was imper- ' missible. The failure of the state to obtain more specific information as to the date or dates of the acts alleged in [the first count] did not render the defendant’s criminal conduct ‘a violation of law continuous in nature.’ [The statute] as charged does not proscribe a continuing course of criminal conduct but proscribes ‘acts directly perpetrated on the' person of the minor and injurious to his moral or physical well-being.’ State v. Dennis, 150 Conn. 245, 250, 188 A.2d 65 (1963).”
Id. at 261, 555 A.2d at 398-99. We are particularly impressed with the following consideration by the' Snook court:
“As we stated in an analogous context, ‘each separate act of forcible sexual intercourse constitutes a separate crime. ... A different view would allow a person who has committed one sexual assault upon a victim to commit with impunity many other such acts during the same encounter.’ State v. Frazier, 185 Conn. 211, 229, 440 A.2d 916 (1981), cert. denied, 458 U.S. 1112[, 102 S.Ct. 3496, 73 L.Ed.2d 1375] (1982); see also State v. Giannotti, 7 Conn. App. 701, 709, 510 A.2d 451, cert. denied, 201 Conn. 804, 513 A.2d 700 (1986) (each individual -act or attempted act or forcible sexual intercourse constitutes separate crime ...). If we adopted the defendant’s reasoning, the commission of one act likely to impair the health and morals of a minor *360 would insulate the perpetrator from further criminal liability for any additional acts of the same character perpetuated on the same minor in subsequent encounters^[5]] Such a result defies rationality.
“A distinct repetition of an act prohibited by [the statute] constitutes a second offense.”
Id. at 262, 555 A.2d at 399.
The Hawaii Supreme Court adopted this rationale in State v. Arceo, 84 Haw. 1, 928 P.2d 843 (1996). There, the court, in holding that multiple acts of alleged “sexual contact” could not be aggregated into one count charging sexual assault in the third degree and that multiple acts of alleged “sexual penetration” could not be aggregated into another count charging sexual assault in the first degree, rejected the appellant’s contention that the two offenses were “continuing offenses.” [6] See also Covington v. State, 703 P.2d 436, 440, modified on reh’g, 711 P.2d 1183 (Alaska.Ct.App.1985)[7]; Jones, 51 Cal.3d at 326, 270 Cal.Rptr. at 629-31, 792 P.2d at 661-62 (Mosk, J., dissenting) (the crime of lewd or lascivious conduct is not a continuous crime); People v. Keindl, 68 N.Y.2d 410, 420, 502 N.E.2d 577, 581-82, 509 N.Y.S.2d 790, 794-95 (1986) (the continuing conduct exception is not applicable to the crimes of sodomy and sexual abuse because those crimes, as defined by the New York statutes, which are in pertinent part identical to Alabama’s statutes defining those terms, punish the performance of a single act); State v. Petrich, 101 Wash.2d 566, 683 P.2d 173, 177 (1984) (indecent liberties and second degree statutory rape are not continuing offenses where the only connection between the incidents is that the victims are the same).
As the court recognized in Arceo, “the case law of certain jurisdictions contains language suggesting that, under certain circumstances, a series of distinct sexual assaults committed against a minor may constitute a *361 single ‘continuing’ offense.” 84 Haw. at 15, 928 P.2d at 857 (emphasis in original; citing as examples People v. Cooks, 446 Mich. 503, 521 N.W.2d 275 (1994); State v. Clark, 209 Mont. 473, 682 P.2d 1339 (1984); Huddleston v. State, 695 P.2d 8 (Okla.Crim.App.1985)). However, the criticism of these cases in Arceo, 84 Haw. at 15-16, 928 P.2d at 857-58, is persuasive. We must give effect to the legislature’s intent as expressed in the pertinent statutes, and we must follow this state’s case-law: we hold that the fact that the evidence of the appellant’s alleged sexual offenses against his daughter before her sixth birthday is generic in nature does not render his criminal conduct “a violation of law continuous in nature.” The failure of the prosecution to obtain more detailed information from A.G. as to the specifics of the alleged incidents did not render the appellant’s conduct a violation of law continuous in nature.
In addition to the continuing offense exception to strict election in child sexual abuse cases, Justice Maddox in his dissent in Ex parte King also recognized a dual approach — the so-called “either/or” rule. He stated in pertinent part:
“Numerous states that have addressed this issue have moved from a strict approach requiring an absolute election to a dual approach, as mentioned by the Washington Court of Appeals, [State v. Brown, 55 Wash.App. 738, 780 P.2d 880 (1989), review denied, 114 Wash.2d 1014, 791 P.2d 897 (1990) ]. The Hawaii Supreme Court has written:
‘“[T]he defendant’s constitutional right to a unanimous verdict is violated unless one or both of the following occurs: (1) at or before the close of its case-in-chief, the prosecution is required to elect the specific act upon which it is relying to establish the “conduct” element of the charged offense; or (2) the trial court gives the jury a specific unanimity instruction, i.e., an instruction that advises the jury that all twelve of its members must agree that the same underlying criminal act has been proved beyond a reasonable doubt.’
“State v. Arceo, 84 Haw. 1, 928 P.2d 843, 874-75 (Haw.1996) (footnote omitted). See also, People v. Aldrich, 849 P.2d 821 (Colo. Ct.App.1992); and People v. Jones, 51 Cal.3d 294, 270 Cal.Rptr. 611, 792 P.2d 643 (1990).”
707 So.2d at 661. See also Arceo, 84 Haw. at 30-31, 928 P.2d at 872-73 (“The. jurisdictions requiring unanimity of jury verdicts in criminal cases and holding that sexual assaults are not ‘continuing offenses’ appear to be in agreement that, where evidence of multiple culpable acts is adduced to prove a single charged offense, the defendant, is entitled either to an election by the prosecution of the single act upon which it is relying for a conviction or to a specific unanimity instruction.” [8]). For other examples of jurisdictions adopting this so-called “either/or” approach, see cases cited in footnote 8, and State v. Hayes, 81 Wash.App. 425, 914 P.2d 788, cert. denied, 130 Wash.2d 1013, 928 P.2d 413 (1996).
The second alternative of the “either/or” rule, i.e., the trial court gives the jury a specific unanimity instruction, must be modified in a case of purely generic evidence: if it is impossible for the- prosecutor to elect, it would be impossible for the jury to select a specific incident. See People v. Winkle, 206 Cal.App.3d 822, 830, 253 Cal.Rptr. 726, 730 (1988). This modification follows:
“[WJhen there is no reasonable likelihood of juror disagreement as to particular acts, and the only question is whether or not the defendant in fact committed all of them, the jury should be given a modified unanimity instruction which, in addition to allowing a conviction if the jurors unanimously agree on specific acts, also allows a conviction if the jury unanimously agrees the defendant committed all the acts described by the victim.”
*362 Jones, 51 Cal.3d at 322, 270 Cal.Rptr. at 627, 792 P.2d at 659. Because the Alabama Supreme Court has upheld the strict election rule, e.g., King, a modified rule in Alabama could not be as broad as the one suggested in Jones: the jury could not be given that part of the instruction allowing for a conviction if the jurors unanimously agreed on specific acts. If the evidence can reasonably be construed to present separate and distinct acts, then the strict election rule would apply and the prosecutor must be made to elect.
In determining whether this modified “either/or” rule should be recognized in Alabama in cases dependant on purely generic evidence and applied in this case, we must balance the legitimate constitutional concerns of the defendant with the state’s interests in prosecuting resident child molesters in appropriate cases.
“[T]he defendant has a due process right to fair notice of the charges against him and reasonable opportunity to defend against those charges. In addition, the defendant is entitled to a verdict'in which all 12 jurors concur, beyond a reasonable doubt, as to each count charged. Finally, the defendant’s conviction can be sustained only if supported by substantial evidence.”
Jones, 51 Cal.3d at 305, 270 Cal.Rptr. at 616, 792 P.2d at 648. “However, due process is a flexible concept requiring accommodation of the competing interests involved; its procedural requisites necessarily vary depending on the nature of those interests.” Brown, 55 Wash.App. at 749, 780 P.2d at 886 (citing Cleveland Board of Education v. Loudermill, 470 U.S. 532, 542-43, 105 S.Ct. 1487, 1493-94, 84 L.Ed.2d 494 (1985)).
In regard to a defendant’s due process rights to fair notice of the charges against him and to a reasonable opportunity to present a defense to those charges, we note that in Alabama, clearly, the defendant has no right to notice of the specific time or place of the alleged offense, so long as it occurred within the applicable limitations period. “It is not necessary to state the precise time or date at which or on which the offense is alleged to have been committed, or the place where the offense is alleged to have been committed unless the time or place is a material element of the offense.” Rule 13.2(d). See also §§ 15-8-30 and -31 (making it unnecessary to allege in the indictment the precise time when, and the place where, the offense was committed, respectively). See, e.g., Cure v. State, 600 So.2d 415, 420 (Ala.Cr.App.), cert. denied, 600 So.2d 421 (Ala.1992) (indictments for rape and sodomy were not required to allege the times and places of the assaults; time is not a material ingredient of' those offenses); Dilbeck v. State, 594 So.2d 168, 174 (Ala.Cr.App.1991) (indictment charging that the appellants committed first degree sodomy and first degree sexual abuse of young day-care victims, which set forth a time frame of approximately 10 years during which the charged incidents could have occurred, was not vague, ambiguous, and overbroad and thus did not hinder the preparation of a defense); Ruffin v. State, 582 So.2d 1159 (Ala.Cr.App.1991) (indictments charging second degree rape were not insufficient for failing to allege time and location); Hambley v. State, 565 So.2d 692, 693 (Ala.Cr.App.1990) (time is not a material ingredient of the offense of sexual abuse in the first degree and thus the indictment did not need to allege the time of the alleged offenses). “‘[U]nder our system of pleading, indictments are rather a statement of legal conclusions, than of facts.’ ” Copeland v. State, 456 So.2d 1150, 1151 (Ala.Cr. App.1984) (quoting Boyd v. State, 3 Ala.App. 178, 181, 57 So. 1019, 1019 (1912)). “‘An indictment is sufficient which substantially follows the language of the statute, provided the statute prescribes with definiteness the constituents of the offense.’ ” Copeland, 456 So.2d at 1151 (quoting Ex parte Allred, 393 So.2d 1030, 1032 (Ala.1980); an indictment charging first-degree rape in the language of the statute is sufficient to apprise the defendant of the charge against him). “‘[T]he prosecution clearly has no duty to provide more explicit notice than human nature and science permit.’ ” Jones, 51 Cal.3d at 317, 270 Cal.Rptr. at 624, 792 P.2d at 656 (quoting Judge Sims’s special writing in People v. Gordon, 165 Cal.App.3d 839, 870-71, 212 Cal. Rptr. 174, 194 (1985)). See also Keindl, 68 N.Y.2d at 419, 502 N.E.2d at 581, 509 N.Y.S.2d at 794 (in a jurisdiction in which an allegation as to time in the indictment is *363 statutorily required, the court considers the following factors in determining whether the defendant has been provided sufficient specificity of time to adequately prepare a defense: the span of time set forth; the knowledge that the prosecution has or should have of the exact date of the crime; the age and intelligence of the victim and other witnesses; the surrounding circumstances; and the nature of the offense, including whether it is likely to occur at a specific time or is likely to be discovered immediately).
Moreover, in specific regard to a prosecution resting on generic testimony, “recent expansion of criminal defendants’ due process rights and procedural protections casts doubt on the continued validity of [cases following a strict election rule], at least as applied to generic testimony by molested children.” Jones, 51 Cal.3d at 311, 270 Cal. Rptr. at 620, 792 P.2d at 652. Cases note that any critical details that are available may be gathered by the defendant through a preliminary hearing[9]; a motion for a more definite statement (in Alabama see Rule 13.2(e), Ala.R.Crim.P.); and pretrial discovery procedures. Jones, 51 Cal.3d at 317-18, 270 Cal.Rptr. at 624-25, 792 P.2d at 656-57, and cases cited therein; see also Covington, 703 P.2d at 439-40; Hayes, 81 Wash.App. at 440, 914 P.2d at 797. The court in Jones concluded that, given the availability of these pretrial procedures, “the prosecution of child molestation charges based on generic testimony does not, of itself, result in a denial of a defendant’s due process right to fair notice of the charges against him.” 51 Cal.3d at 318, 270 Cal.Rptr. at 625, 792 P.2d at 657. But see Jones, 51 Cal.3d at 332, 270 Cal.Rptr. at 633 n. 5, 792 P.2d at 665 n. 5 (Mosk, J., dissenting) (“The availability of additional pretrial procedures cannot cure the problem of notice if the end product of those proee-dures is the victim’s insufficiently specific allegations.”).
The fact that the child victim of a resident molester cannot recall or relate specific dates, locations, or other details of the alleged offenses does not inevitably preclude a defense. Jones, 51 Cal.3d at 319, 270 Cal. Rptr. at 625, 792 P.2d at 657. In so holding, the Jones court explained:
“[A]s explained in several decisions, only infrequently can an alibi or identity defense be raised in resident child molester cases. Usually, the trial centers on a basic credibility issue — the victim testifies to a long series of molestations and the defendant denies that any wrongful touchings occurred. (E.g., People v. Moreno, 211 Cal.App.3d [776,] 787-788, 259 Cal.Rptr. 800 [ (1989) ]; People v. Obremski, 207 Cal. App.3d [1346,] 1353, 255 Cal.Rptr. 715 [ (1989) ]; People v. Dunnahoo, 152 Cal. App.3d [561,] 572, 199 Cal.Rptr. 796 [ (1984) ].) As indicated in Dunnahoo, if the defendant has lived with the victim for an extensive uninterrupted period and therefore had continuous access to the victim, neither alibi nor wrongful identification is likely to be an available defense.
“Even when an alibi defense is tendered, there is no reason why the jury would be less inclined to credit the defense as applied to appropriate counts, merely because the victim’s generic testimony has implicated the defendant in additional counts or offenses not challenged by the alibi. Indeed, the fact that the defendant has established an alibi covering some of the time periods alleged in the information could significantly undermine the victim’s testimony as to the remaining counts.
[[Image here]]
“Moreover, ... generic child molestation charges by no means deprive the defendant of a reasonable opportunity to defend. *364 Initially, of course, the defendant has the option of taking the witness stand and directly denying any wrongdoing. If credible, his testimony should prevail over the unspecific assertions of his young accuser. In some cases, the very nonspecificity of the child’s testimony, especially if uncorroborated, may offer defense counsel fertile field for challenging the child’s credibility. [10] In addition to the defendant’s direct testimony, his cross-examination of the child and supporting witnesses, and the availability of the cautionary instruction mandated by Penal Code section 1127f [which states, in part, ‘In evaluating the testimony of a child you should consider all of the factors surrounding the child’s testimony, including the age of the child and any evidence regarding the child’s level of cognitive development.’], the defendant may be permitted to introduce expert character evidence, based on standardized tests and personal interviews, to the effect that his personality profile does not include a capacity for deviant behavior against children.
“As explained in People v. Moreno, supra, 211 Cal.App.3d 776, 788, 259 Cal.Rptr. 800, besides merely denying the charges, the defendant may introduce evidence outlining the victim’s past fabrications and offering innocent explanations for the victim’s apparent knowledge of or familiarity with sexual behavior generally or the defendant’s physical characteristics in particular, as well as expert testimony refuting or contradicting any physical evidence of molestation.
“Finally, supplementing the usual defense trial techniques, the defendant has a variety of procedural due process remedies available to obtain relief from unwarranted prosecution or punishment, including demurrers, pretrial motions to set aside the information or indictment, and motions for judgment of acquittal, modification of verdict or new trial.”
51 Cal.3d at 319-20, 270 Cal.Rptr. at 625-26, 792 P.2d at 657-58 (citations omitted). See also Woertman v. People, 804 P.2d 188 (Colo. 1991) (although under Colorado law a specific time may be required in a bill of particulars if it is necessary to enable the defendant to properly prepare a defense or to protect against subsequent prosecution for the same offense, in the case where the defendant is charged with a sexual offense against a child to 'whom the defendant had unsupervised access on a regular basis, the defendant was not prejudiced by the lack of a specified time because an alibi defense was not a viable defense); Hayes, 81 Wash.App. at 441, 914 P.2d at 797-98; Brown, 55 Wash.App. at 749, 780 P.2d at 886. After noting that an alibi defense would be unavailing to a resident abuser given that the defendant lived with the victim for an extensive, uninterrupted period, day and night, and also given that certain of the illicit sexual conduct took but moments to perform, the court in People v. Fernandez, 263 Cal.Rptr. 139, 147 (1989),[11] stated:
“[T]he similarity and repetition of the acts would make it difficult, if not impossible, for an adult, let alone a child, to pinpoint the specific circumstances of each act. Should then the very manner in which the acts were committed support a due process shield, precluding prosecution commensurate with actual culpability, simply because the defendant is unable to assert alibi defenses? We think not.”
But see Jones, 51 Cal.3d at 331, 270 Cal. Rptr. at 633, 792 P.2d at 665 (Mosk, J., *365 dissenting) (the defendant, faced with only-generic evidence, can make only the most generalized attack on the victim’s credibility; without details with which to cross-examine the victim, “he can never show, for example, that these details render the child’s story physically impossible, or highly unlikely, or contradictory”); People v. Van Hoek, 200 Cal.App.3d 811, 817, 246 Cal.Rptr. 362, 356 (1988) (a defendant would “virtually be precluded from presenting an alibi defense to the acts unless he could account for every time he was in the presence of the victim,” and he is precluded from attacking the victim’s testimony “in any way other than a general attack” because he cannot challenge the specifics of the act to undermine the victim’s credibility as to details); Brown, 55 Wash.App. at 749, 780 P.2d at 886 n. 8 (“We recognize that more specificity in testimony may be required when alibi or misidentifieation is raised as a defense.”).
Further, a defendant’s right to be found guilty only upon evidence beyond a reasonable doubt evidence is also not endangered by a conviction resting upon purely generic testimony regarding sexual molestations. We agree with the court in Jones, 51 Cal.3d at 313, 270 Cal.Rptr. at 622, 792 P.2d at 654, that the more sensible conclusion is that “generic testimony is sufficiently substantial from an evidentiary standpoint.” In so holding, the Jones court reasoned:
“It must be remembered that even generic testimony (e.g., an act of intercourse ‘once a month for three years’) outlines a series of specific, albeit undifferentiated, incidents each of which amounts to a separate offense, and each of which could support a separate criminal sanction. (Of course, prosecutors should exercise discretion in limiting the number of separate counts charged. No valid purpose would be served by charging hundreds or thousands of separate counts of molestation, when even one count may result in a substantial punishment.)
[[Image here]]
“ ... Does the victim’s failure to specify precise date, time, place or circumstance render generic testimony insufficient? Clearly not. As many of the cases make clear, the particular details surrounding a child molestation charge are not elements of the offense and are unnecessary to sustain a conviction.
“The victim, of course, must describe the kind of act or acts committed with sufficient specificity, both to assure that unlawful conduct indeed has occurred and to differentiate between the various types of proscribed conduct (e.g. lewd conduct, intercourse, oral copulation or sodomy). Moreover, the victim must describe the number of acts committed with sufficient certainty to support each of the counts alleged in the information or indictment (e.g., ‘twice a month’ or ‘every time we went camping’). Finally, the victim must be able to describe the general time period in which these acts occurred (e.g., ‘the summer before my fourth grade,’ or ‘during each Sunday morning after he came to live with us’) to assure the acts were committed within the applicable limitation period. Additional details regarding the time, place or circumstance of the various assaults may assist in assessing the credibility or substantiality of the victim’s testimony, but are not essential to sustain a conviction.”
51 Cal.3d at 314-16, 270 Cal.Rptr. at 622-24, 792 P.2d at 654-56 (emphasis in original; citations omitted). Accord Hayes. For examples of generic evidence sufficient to support a conviction, see Jones (supporting convictions for six counts of lewd conduct, evidence in the form of the victim’s testimony that the defendant molested him once or twice a month, that he recalled five different locations where the molestations occurred, and that he testified that the defendant would orally stimulate him in bed under the covers or after drying him off after a shower); Commonwealth v. Kirkpatrick, 423 Mass. 436, 443, 668 N.E.2d 790, 795, cert. denied, — U.S. -, 117 S.Ct. 527, 136 L.Ed.2d 413 (1996) (verdicts on 10 counts of forcible rape of child under 16 years and on 10 counts of indecent assault were sufficiently supported by the victim’s testimony that the defendant (her mother’s live-in boyfriend) had committed various sex acts upon her, including intercourse, approximately three times a week during a *366 two-year period, providing “reasonably detailed descriptions of various distinguishable forms of abuse,” although her testimony “provided little basis for the prosecution to identify particular acts of abuse on which to focus its prosecution”); Hayes, 81 Wash. App. at 429, 914 P.2d at 791 (verdicts on four counts of rape of a child were sufficiently supported by the victim’s testimony that her father “put his private part in mine” as many as four times and up to “[t]wo or three times a week” between 1990 and 1992). See also Brown, 55 Wash.App. at 749, 780 P.2d at 886 (verdicts for two counts of indecent liberties and four counts of statutory rape sufficiently supported by victim’s testimony describing in detail her stepbrother’s usual conduct, estimating the number of times she was molested, and generally relating particular kinds of abuse to events in her life, e.g., her grade in school).
In regard to the defendant’s right to a unanimous jury verdict, we note:
“[W]e reject the contention that jury unanimity is necessarily unattainable where testimony regarding repeated identical offenses is presented in child molestation cases. In such cases, although the jury may not be able to readily distinguish between the various acts, it is certainly capable of unanimously agreeing that they took place in the number and manner described.
“As previously stated, even generic testimony describes a repeated series of specific, though indistinguishable, acts of molestation. The unanimity instruction assists in focusing the jury’s attention on each such act related by the victim and charged by the People. We see no constitutional impediment to allowing a jury, so instructed, to find a defendant guilty of more than one indistinguishable act, providing the three minimum prerequisites heretofore discussed are satisfied.
“For example, if the victim testified that an act of oral copulation occurred once each month for the first three months of 1990, and the People charge three counts of molestation, the jury’s unanimous conclusion that these three acts took place would satisfy the constitutional requirement of unanimity.
“Similarly, if an information charged two counts of lewd conduct during a particular time period, the child victim testified that such conduct took place three times during that same period, and the jury believed that testimony in toto, its difficulty in differentiating between the various acts should not preclude a conviction of the two counts charged, so long as there is no possibility of jury disagreement regarding the defendant’s commission of any of these acts.
“In a ease in which the evidence indicates the jurors might disagree as to the particular act defendant committed, the standard unanimity instruction should be given. (See, e.g., People v. Gordon, supra, 165 Cal.App.3d at pp. 855-856, 212 Cal. Rptr. 174 [defendant raised separate defenses to the two offenses at issue].) But when there is no reasonable likelihood of juror disagreement as to particular acts, and the only question is whether or not the defendant in fact committed all of them, the jury should be given a modified unanimity instruction which, in addition to allowing a conviction if the jurors unanimously agree on specific acts, also allows a conviction if the jury unanimously agrees the defendant committed all the acts described by the victim.
“As pointed out recently in People v. Moore, supra, 211 Cal.App.3d at page 1414, 260 Cal.Rptr. 134, because credibility is usually the ‘true issue’ in these cases, ‘the jury either will believe the child’s testimony that the consistent, repetitive pattern of acts occurred or disbelieve it. In either event, a defendant will have his unanimous jury verdict, and the prosecution will have proven beyond a reasonable doubt that the defendant committed a specific act, for if the jury believes that defendant committed all the acts it necessarily believes he committed each specific act.’”
Jones, 51 Cal.3d at 321-22, 270 Cal.Rptr. at 627, 792 P.2d at 659 (some citations omitted; bracketed material in original) (quoted in part with approval in Thomas, 803 P.2d at 153; followed in Kirkpatrick, 423 Mass, at *367 443, 668 N.E.2d at 795). But see Jones, 51 Cal.3d at 327-28, 270 Cal.Rptr. at 631, 792 P.2d at 663 (Mosk, J., dissenting) (“If jurors are unable to agree that the defendant committed any single act, they cannot be expected to agree that the defendant committed ‘all’ the acts.”).
As we noted above, courts must weigh the legitimate interests and concerns of a defendant being prosecuted on generic evidence against the state’s interests in prosecuting resident child molesters. “The challenge is to fairly balance the due process rights of the accused against the inability of the young accuser to give extensive details regarding multiple alleged assaults.” Hayes, 81 Wash. App. at 438, 914 P.2d at 796. It is a certain reality that “testimony describing a series of essentially indistinguishable acts of molestation is frequently the only testimony forthcoming from the victim.” Jones, 51 Cal.3d at 300, 270 Cal.Rptr. at 613, 792 P.2d at 645. “To hold that such testimony, however credible and substantial, is inadequate to support molestation charges would anomalously favor the offender who subjects his victim to repeated or continuous assaults.” Id. See also State v. Wilcox, 808 P.2d 1028, 1033 (Utah 1991). “With the exception of those who happen to select victims with better memories or who are one-act offenders, the most egregious child molesters effectively would be insulated from prosecution.” Brown, 55 Wash.App. at 749, 780 P.2d at 886. Accord Kirkpatrick, 423 Mass. at 443, 668 N.E.2d at 795.
After weighing the considerations discussed above, we adopt, for purposes of this case, the “either/or” rule, but only as that rule is modified for generic evidence: where the evidence of more than one incident of sexual molestation to a child victim by a resident child molester is purely generic and where “there is no reasonable likelihood of juror disagreement as to particular acts, and the only question [for the jury] is whether or not the defendant in fact committed all of [the incidents],” the trial court should inT struct the jury that it can find the defendant guilty only if it unanimously agrees that he committed all the incidents described by the victim. Jones, 51 Cal.3d at 322, 270 Cal. Rptr. at 627-28, 792 P.2d at 659.
We base this holding on the following considerations. The adoption of this rule in this case does not harm the appellant’s due process right to fair notice of the charges against him. Foremost, no notice of time or place of the alleged crimes was required. Moreover, such notice was impossible to provide: the state had no such knowledge and could not have gathered such knowledge by a more thorough investigation; the victim was understandably unable to particularize the date and time of the crimes, given her age, her lack of maturity, and the nature of the crimes (e.g., unlikely to have been committed under circumstances that could be distinguished from other everyday circumstances, likely to have been performed in only moments, and unlikely to have been discovered immediately); and the missing details of time and place were not available from any source other than the victim. Furthermore, the appellant pursued no procedural avenue seeking more particularized notice than was provided in the indictment.
Neither was the appellant’s due process right to a reasonable opportunity to defend against the charges violated. A defense of alibi or misidentification would have been completely insupportable. The sole issue was credibility.
The generic nature of the evidence did not raise a question as to the sufficiency of that evidence. While the jury was not provided any evidence as to the frequency of the alleged crimes, e.g., once a month for four months, none was necessary because the appellant was charged with only one count of sexual abuse and one count of sodomy. Moreover, the kind of acts committed were described with abundant specificity. A.G. was able to describe in graphic detail the actual commission of sexual abuse and sodomy. The jury could have reasonably concluded from her testimony that her account could have come only from personal experience.
Furthermore, the appellant’s right to jury unanimity was not endangered. Although the evidence indicated that the incidents of sexual acts occurred more than the one time charged, the evidence in its entirety offered *368 absolutely no possibility of jury disagreement regarding the appellant’s commission of any of these acts. The only issue before the jury was the credibility of the victim’s account of the repetitive sexual offenses alleged. By the jury’s rejection of the appellant’s general denial, the appellant has his unanimous jury verdict. See also infra.
Finally, we note that it was not error for the prosecutor not to elect an incident upon which to proceed; we concur with his conclusion, as well as the trial court's, that an election, under these facts, was not possible. In light of this impossibility, if we do not adopt the modified “either/or” rule under these circumstances, the appellant would, in effect, be insulated from prosecution.
By adopting the “either/or” rule under these facts, we must necessarily hold that the trial court erred in failing to give the jury a specific unanimity instruction. However, in so holding, we must point out that, because we are holding for the first time that such an instruction would be required in a generic evidence sex molestation case, the trial court had absolutely no guidance at the time of the trial of this case.
Although the trial court erred, we conclude that it is harmless error. In Jones, the court observed that “[s]ome cases found harmless any error in failing either to select "specific offenses or [to] give a unanimity instruction, if the record indicated the jury resolved the basic credibility dispute against defendant and would have convicted the defendant of any of the various offenses shown by the evidence to have been committed.” 51 Cal.3d at 307, 270 Cal.Rptr. at 617, 792 P.2d at 649 (emphasis in original; citing People v. Moore, 211 Cal.App.3d 1400, 1415-16, 260 Cal.Rptr. 134 (1989); People v. Winkle, 206 Cal.App.3d at 828-30, 253 Cal.Rptr. 726; People v. Schultz, 192 Cal.App.3d 535, 539-40, 237 Cal.Rptr. 513 (1987); People v. Deletto, 147 Cal.App.3d 458, 466, 470-73 & n. 10, 195 Cal.Rptr. 233 (1983), cert. denied, 466 U.S. 952, 104 S.Ct. 2156, 80 L.Ed.2d 542 (1984)). For example, in Winkle, the victim testified that the defendant, her uncle, had molested her regularly each week; the prosecution made no election and no unanimity instruction was given. The court concluded that no prejudice resulted. Because the defendant made only a weak attempt to assert an alibi defense, the ultimate question for the jury was the defendant’s credibility and the verdict necessarily implied that the jury unanimously believed the victim.
We find further guidance in Covington, although the court addressed the issue under a standard different from our harmless error standard.[12] There, the court observed:
“In a case where discrete incidents of sexual abuse are charged together in a single count, and impeaching and contrary evidence of differing weight is offered to rebut the several incidents, a real possibility exists that individual jurors will reject some incidents, based upon an. evaluation of the impeaching and contrary evidence, but accept other incidents as proven. In such a case, the twelve jurors may agree that the defendant committed at least one of, the incidents, but be in general disagreement as to which incident that was.”
711 P.2d at 1185. The court then noted that the victim, who was 18 years’ old at the time of trial, was unable to differentiate between the various acts committed against her by her father from the time she was 9 or 10 years’ old, including sexual intercourse, “practically every night,” 703 P.2d at 438. The appellant denied the sexual intercourse, and “no impeaching or contrary evidence was more applicable to one incident than another.” 711 P.2d at 1185. The court found that, upon these circumstances, each juror was *369 confronted with the straight question of credibility and that the jury’s guilty verdict established that it accepted the victim’s testimony and concluded that the appellant was guilty beyond a reasonable doubt. The court concluded that “the record unequivocally establishes that the trial court’s error in not requiring the state to elect among incidents, or alternatively, in failing to provide a curative instruction, did not appreciably affect any verdict against [the appellant].” 711 P.2d at 1185. Compare State v. Fitzgerald, 39 Wash.App. 652, 694 P.2d 1117 (1985) (error in permitting a jury to consider multiple incidents of sexual assault against the same victim charged in a single count, in the absence of an election by the prosecution or a clarifying instruction, was not harmless, in light of conflicting testimony of the victims as to various incidents of sexual abuse).
As we have already noted, the present ease hinged solely on credibility, i.e., the defense was designed to show that none of the incidents occurred. There was absolutely no rational basis by which the jury could have found that the appellant committed one of the incidents but not the others. Any juror believing that one incident took place would have unquestionably believed that all the incidents took place. Thus, we can say that no rational juror could have had a reasonable doubt as to any of the incidents alleged. By returning guilty verdicts, the jurors must necessarily have unanimously rejected the appellant’s defense and, by believing the victim, unanimously found that all the incidents occurred. We must conclude that, under these circumstances, the jury in fact unanimously agreed on the act forming the basis of the verdicts. Moreover, the appellant’s rights to notice of the charges against him, to the opportunity to formulate a defense, and to be convicted only upon sufficient proof were not injuriously'affected. We conclude to a certainty that, upon the peculiar circumstances of this case, the trial court’s failure to give a specific unanimity instruction, necessitated by the prosecution’s inability to elect, was harmless error. Compare Ex parte Curry, 471 So.2d 476, 479 (Ala.1984) (in a case not addressing an election issue, where the jury was not instructed generally that it must reach a unanimous verdict in order to convict or acquit, the court stated that “the unanimous-verdict is so fundamental to the rights of the defendant that an omission to charge on that requirement must necessarily be prejudicial” because “one member of the jury could [have] alter[ed] the ultimate verdict had they been instructed”).
In conclusion, we hold that the Alabama Supreme Court’s reaffirmation in Ex parte King of the strict election rule in resident child molester cases does not apply to the facts of this case, because these facts present truly generic evidence that allows for no differentiation of distinguishing incidents. In a case presenting truly generic evidence, a modified version of the “either/or” rule shall apply.
We find it appropriate here to observe another avenue taken by California in an attempt to accommodate all legitimate concerns of a resident child molester/defendant without immunizing the defendant from prosecution. The lower courts of California called on that state’s supreme court or legislature to reconsider or redefine the principles followed by the lower courts mandating a reversal of child molestation convictions. Jones, 51 Cal.3d at 310, 270 Cal.Rptr. at 620, 792 P.2d at 652. As discussed above, the supreme court was induced in Jones to review those principles and it declined to embrace them. However, in the year before Jones was decided, the legislature created the new offense of “continuous sexual abuse of a child,” punishable by 6, 12, or 16 years’ imprisonment, by enacting California Penal Code § 288.5, which provides, in pertinent part:
“(a) Any person who either resides in the same house with the minor child or has recurring access to the child, who over a period of time, not less than three months in duration, engages in three or more acts of substantial sexual conduct with a child under the age of 14 years at the time of the commission of the offense, ... or three or more acts of lewd or lascivious conduct ... with a child under the age of 14 years at the time of the commission of the offense is guilty of the offense of continuous sexual abuse of a child....
*370 “(b) To convict under this section the trier of fact, if a jury, need unanimously agree only that the requisite number of acts occurred, not on which acts constitute the requisite number.” . •
In creating this offense, the legislature “[found] and declare[d] that ... there is an immediate need for additional statutory protection for the most vulnerable among our children ... some of whom are being subjected to continuing sexual abuse_” Cal. Stats.1989, ch. 1402, § 1(a), p. 6138. Although “Jones, for most practical purposes, renders section 288.5 unnecessary,” People v. Higgins, 9 Cal.App.4th 294, 301, 11 Cal. Rptr.2d 694, 698 (1992), it is a “codification of generic proof,” id., and thus an expression of the legislature of its intent “to make proof of specific facts unnecessary,” id. at 307, 11 Cal.Rptr.2d at 702. The absence of a requirement of specificity accommodates the reality that “proof of specific acts of molestation by a resident child molester may be murky, [but] evidence of the cumulative conduct is clear.” Id. The legislature intended to overcome the due process problems raised in prior cases by creating a continuous-course-of-eonduct crime. Jones, 51 Cal.3d at 328-30, 270 Cal.Rptr. at 631-32, 792 P.2d at 663-64 (Mosk, J., dissenting).
“[S]ection 288.5 is a well designed accommodation of competing interests: the protection of child victims from molestation and the accused’s right to a unanimous verdict. Justice Mosk [in his dissent in Jones ] pointed to several safeguards the Legislature incorporated into section 288.5 to assure a balancing of ‘the state’s compelling interest in prosecuting the resident child molester with the protection of a criminal defendant’s rights.[’ 51 Cal.3d at 329, 270 Cal.Rptr. at 632, 792 P.2d at 664.] Primary among these safeguards is the limitation that the defendant be charged with only one count per victim. Although penalties for violation of section 288.5 are severe — with possible 6, 12, or 16 year sentences — the one-count-per-victim provision is a significant restriction on overzealous prosecutors, who may be tempted to compile a multitude of convictions based on potentially exaggerated estimates of the frequency of the criminal conduct by victims concededly unable to recall specifics.
‘“Section 288.5 would also require that jurors agree the defendant committed at least three acts of sexual abuse before convicting him on a given count. The three-act requirement thus sets a baseline for the crime of continuing sexual abuse, making clear that a defendant may not be convicted of that crime without substantial evidence that he engaged in a repetitive pattern of abusive acts.
“ ‘Finally, section 288.5 requires that the defendant have had three months’ continuous access to the victim. The continuous-access requirement makes clear that the statute was targeted at the resident child abuse situation, where problems with generic testimony are most likely to arise, and was not to be used against individuals who have only transient contact with the alleged victim.’ (People v. Jones, supra, 51 Cal.3d at p. 329, 270 Cal.Rptr. 611, 792 P.2d 643 (J. Mosk, dissenting.).)”
9 Cal.App.4th at 304-05, 11 Cal.Rptr.2d at 700 (emphasis in original). This statute has survived constitutional attack in People v. Gear, 19 Cal.App.4th 86, 23 Cal.Rptr.2d 261 (1993), cert. denied, 511 U.S. 1088, 114 S.Ct. 1846, 128 L.Ed.2d 471 (1994); Higgins, supra.
Such legislation in Alabama would have a much greater impact because our Supreme Court has not embraced a more liberal view of election, the “either/or” rule. While our holding in this case applies to those cases presenting pure generic evidence, the rule in Alabama as to a mixed case of generic evidence and minimal specific evidence remains that the state must elect. Legislation like that in California would give the prosecution more options in prosecuting resident child abusers while also respecting the defendant’s rights.[13]
*371 As a final note, we urge the Alabama Supreme Court to consider expanding the application of the “either/or” rule to include those cases of sexual offenses against children by resident abusers that rest upon evidence that is not purely generic. See also Sparrow v. State, 606 So.2d 219 (Ala.Cr.App. 1992) (Monteil, J., concurring in part and dissenting in part) (encouraging the Alabama Supreme Court to adopt the rationale of Jones). It is within the context of crimes against children that this issue arises, Petrich, 101 Wash.2d at 571-73, 683 P.2d at 178, so such an expansion would necessarily affect only a narrow class of cases. We agree with the dissent in Jones, that “[t]he typical resident child molester case is premised on a mixture of both generic and nongeneric testimony, describing both specific, distinguishable acts and generalized accounts of moles-, tation.” 51 Cal.3d at 324, 270 Cal.Rptr. at 628, 792 P.2d at 660. In regard to this typical case, in our opinion, the law as it presently stands does not serve the ideals of justice. This expansion could more effectively address the realities of sexual abuse by resident molesters and possibly avoid unnecessarily perpetuating the trauma these victims must experience.
Accordingly, the appellant’s convictions are affirmed.
The foregoing opinion was prepared by Retired Appellate Judge John Patterson while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e).
AFFIRMED.
LONG, P.J., and MeMILLAN, BROWN, and BASCHAB, JJ., concur.
COBB, J., concurs specially.

. During cross-examination of Ms. DuBoise, she testified that A.G. had indicated, in regard to what her father had put in her vagina, one finger, then two, and then the entire hand. Ms. DuBoise testified that it is not uncommon for a five-year-old child to believe, from the presence of the perpetrator’s hand in the vaginal area and from the pain experienced by the victim,' that an entire hand was put inside her. ' ■

. This is not to say, however, that a child’s testimony is inherently suspect or unreliable. See State v. Arceo, 84 Haw. 1, 24-26 n. 26, 928 P.2d 843, 866-68 n. 26 (1996), where the court listed numerous scientific questions, findings, and conclusions pertaining to the cognitive capacities of children, particularly child abuse victims, which had been extensively compiled from relevant social science literature and summarized in L. McGough, Child Witnesses (Yale, University Press 1994). Among the findings reported by Professor McGough and listed by the court are the following:
"(7) 'even four-year-olds can accurately recall the basic temporal order of events'; [Child Witnesses] at 28; (8) '[c]hildren are also no more prone than adults to confuse actual frequency of events with imagined presentations'; id. at 29; (9) ‘mastery of the concepts of time and distance increases with age[;] ... five-year-olds were unable to make either required analysis[;] ... the time concept was rarely attained by either eight- or eleven-year-olds, and only adults used it extensively in problem solving’; id. at 31; ....’’
See also Jones, 51 Cal.3d at 315, 270 Cal.Rptr. at 623, 792 P.2d at 655 ("Recent studies have undermined traditional notions regarding the unreliability of child witnesses, their untruthfulness, susceptibility to leading questions, or inability to recall prior events accurately. ‘Empirical studies have produced results indicating that most of these traditional assumptions are completely unfounded.’ (Foie, Child Witnesses in Sexual Abuse Criminal Proceedings: Their Capabilities, Special Problems, and Proposals for Reform (1986) 13 Pepp. L.Rev. 157, 158.))” (additional citations omitted).
*358 Huddleston v. State, 695 P.2d 8, 10-11 (Okla.Crim.App.1985). See also Jones v. State, 781 P.2d 326 (Okla.Crim.App.1989); and Drake v. State, 761 P.2d 879 (Okla.Crim.App.1988).”
707 So.2d at 661.

. The appellant was charged with first degree sodomy pursuant to § 13A-6-63 (a)(3), which provides, "A person commits the crime of sodomy in the first degree if ... [h]e, being 16 years old or older, engages in deviate sexual intercourse with a person who is less than 12 years old.” “Deviate sexual intercourse” is defined as "[a]ny act of sexual gratification between persons not married to each other involving the sex organs of one person and the mouth or anus of another.” § 13A-6-60(2).
He was further charged with first degree sexual abuse pursuant to § 13A-6-66(a)(3), which provides, "A person commits the crime of sexual abuse in the first degree if ... [h]e, being 16 years old or older, subjects another person to sexual contact who is less than 12 years old.” "Sexual contact" is defined as "[a]ny touching of the sexual or other intimate parts of a person not married to the actor, done for the purpose of gratifying the sexual desire of either party.”

. The statute provided, in pertinent part, "Any person who wilfully or unlawfully ... does any act likely to impair the health or morals of any ... child [under the age of sixteen] shall be fined not more than five hundred dollars or imprisoned not more than ten years or both.”

.Under this reasoning, a defendant who the evidence established committed 75 acts of sodomy against one victim would have one conviction and one sentence. Yet, under this same reasoning, a defendant convicted of having committed one act of sexual abuse and one act of sodomy would have two convictions with two sentences. See Holley v. State, 671 So.2d 131 (Ala.Cr.App.1995) (the appellant’s acts constituting the offenses of sodomy and sexual abuse of his 9-year-old daughter, which occurred during the course of one night, were separate and distinct acts constituting separate criminal offenses); Gwin v. State, 668 So.2d 899, 901 (Ala. Cr.App.1995) (sodomy and sexual abuse of the 7-year-old victim by the appellant, a housemate, arose from different conduct and thus constituted separate criminal acts, where the evidence indicated that several acts of sexual contact occurred between the appellant and the victim during the period of a year); Rhodes v. State, 651 So.2d 1122, 1124 (Ala.Cr.App.1994) ("Though the acts [of sodomy and sexual abuse of the 12-year-old victim by her uncle] occurred during the course of one evening, it is clear from the victim's testimony that two separate instances were involved."); Hendrix v. State, 589 So.2d 769, 772 (Ala.Cr.App.1991) (sodomy and sexual abuse "were separate and distinct crimes which arose as a result of different conduct” and “ '[w]here there is evidence of separate and distinct acts constituting separate criminal offenses, separate convictions and sentences may be legally had under multiple counts of an indictment.’ ”) (quoting Terrell v. State, 429 So.2d 656, 659 (Ala.Cr.App. 1982)).

. Section 707-732(l)(b), Haw.Rev.Stat. (1993), provides, in pertinent part: "A person commits the offense of sexual assault in the third degree if ... [t]he person knowingly subjects to sexual contact another person who is less than fourteen years old or causes such a person to have sexual contact with the person.” Section § 707-700 defines "sexual contact” as "any touching of the sexual or other intimate parts of a person not married to the actor, or of the sexual or other intimate parts of the actor by the person, whether directly or through the clothing or other material intended to cover the sexual or other intimate parts."
Section 707-730(l)(b) provides, in pertinent part; "A person commits the offense of sexual assault in the first degree if ... [t]he person knowingly subjects to sexual penetration another person who is less than fourteen years old.” Section § 707-700 defines "sexual penetration” as
"vaginal intercourse, anal intercourse, fellatio, cunnilingus, anilingus, deviate sexual intercourse, or any intrusion of any part of a person’s body or of any object into the genital or anal opening of another's body; it occurs upon any penetration, however slight, but emission is not required. For purposes of this chapter, each act of sexual penetration shall constitute a separate offense.”

. On rehearing, the court reconsidered its holding that the violation of the appellant's right to a unanimous verdict required a new trial and instead affirmed the convictions upon its finding that the error did not appreciably affect the jury's verdict.

. The court in Arceo, 84 Haw. at 31-32, 928 P.2d at 873-74, cited the following as examples of jurisdictions that have adopted the "either/or” rule: Petrich, 101 Wash.2d at 572, 683 P.2d at 176-78; Covington, 703 P.2d at 440-41 (relying on Petrich); Aldrich, 849 P.2d 821, 825 (Colo.Ct. App.1992) (relying on Thomas v. People, 803 P.2d 144 (Colo. 1990), and Woertman v. People, 804 P.2d 188 (Colo.1991)); and State v. Brown, 762 S.W.2d 135, 137 (Tenn.1988).

. We acknowledge that Rule 5.1(a)(4), Ala. R.Crim.P., provides that the defendant has no absolute right.to a preliminary hearing after the grand jury has returned an indictment charging the defendant with the same felony offense for which the defendant had been charged by complaint and arrested. However, “[t]he resulting denial to defendants of an absolute right to the discovery mechanism of a preliminary hearing is adequately offset both by the other rules which provide defendants with formal methods of discovery designed to eliminate trial 'by ambush’ and by expanded pre-trial motion practice.” Committee Comments, Rule 5.1. See also Jones, 51 Cal.3d at 318, 270 Cal.Rptr. at 625, 792 P.2d at 657 (the recent passage of a measure doing away with the benefit of a preliminary examination after indictment for a felony "does not affect or alter our analysis or disposition”).

. See, e.g., Commonwealth v. Kirkpatrick, 423 Mass. 436, 441-42, 668 N.E.2d 790, 794 (1996) (in the prosecution of the resident child molester defendant for 20 counts of sexual molestation of the victim over a 2-year period when she was between the ages of 9 and 11 years old, "the defendant exploited the lack of specificity by demonstrating on cross-examination that, apart from her account of abuse, the victim was able to remember and articulate quite detailed information about events in her life and to link these events to particular points in time").

. Upon review of this opinion, the California Supreme Court remanded the case to the Court of Appeal for the Sixth District with direction to vacate the opinion for reconsideration in light of Jones. 272 Cal.Rptr. 612, 795 P.2d 782 (1990). In a subsequent opinion, the Court of Appeal stated that it found its previous discussion to be fully consistent with Jones and thus found no need to further write to the issue. 226 Cal. App.3d 669, 276 Cal.Rptr. 631, 634 n. 2 (1990).

. The following standard was applied in Coving-ton: The “error is harmless where it can be fairly said that the alleged error did not appreciably affect the jury’s verdict.” 711 P.2d at 1185.
In our analysis of the facts for harmless error, we have observed the following standard:
“No judgment may he reversed or set aside, nor new trial granted in any ... criminal case on the ground of misdirection of the jury, the giving or refusal of special charges ..., nor for error as to any matter of pleading or procedure, unless in the opinion of the court to which the appeal is taken or application is made, after an examination of the entire cause, it should appear that the error complained of has probably injuriously affected substantial rights of the parties.”
Ala.R.App.P. 45.

. We also note that the Colorado legislature, in its "acknowIedg[ing] the difficulties young children have distinguishing references to time, namely, recalling specific dates and places, particularly where a young child is subjected to abuse over a prolonged period of time,” enacted § 18-3-405(2)(c), 8B C.R.S. (1993 Supp.), which provides for an enhanced punishment for sexual *371 assault on a child if the assault is a part of a pattern of sexual abuse committed by the defendant upon the same victim. People v. Longoria, 862 P.2d 266, 270 (Colo.1993). The statute specifically provides that “[n]o specific date or time must be alleged for the pattern of sexual abuse." In upholding this statute against a constitutional challenge, the court in Longoria noted that it "is an unmistakable indication of the legislative intent to proscribe a kind of pattern of sexual abuse conduct which it considers to be of greater social consequences and which merits greater punishment.” Id. at 271.